## THE CHARLES MORGAN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

Argued April 24, 1885.—Decided May 4, 1885.

In case of collision on the Mississippi, if the facts show that the injured vessel made the first signal, and that it was responded to by the offending vessel, and that no question was made below as to its being made within the time

required by the Rules of the Board of Supervising Inspectors, it will be presumed to have been made at the proper distance, in compliance with the Rules.

The Circuit Court, in an appeal from a decree of a District Court in admiralty, may in its discretion permit amendments to the libel, enlarging the claims, and including claims rejected below as not specified in the pleadings.

*The Lucille,* 19 Wall. 73, affirmed and applied.

*The North Carolina,* 15 Pet. 40, distinguished.

The finding of the board of local inspectors, and the documents connected therewith are not admissible in a collision suit in admiralty for the purpose of showing that the offending vessel was in her proper position in the river, and had proper watches and lights set at the time of the collision.

When depositions of witnesses, made in another suit, are offered for the purpose of impeaching their evidence, and are admitted, and exception is taken thereto, and the bill of exceptions shows that "in the cross-examination of each of said witnesses the attention of the witness was called to the evidence" given by him in [the other case] and the said witnesses were specifically examined as to the correctness of said evidence, and that "at the offering, no objection was made that the evidence offered was not the evidence of said witnesses respectively, or that the same had been imperfectly taken and reported," but the cross-examination is not incorporated into the bill of exceptions ; it will be presumed that ample foundation was laid for the introduction of the evidence.

Although the general rule is that when contradictory declarations of a witness made at another time in writing are to be used for purposes of impeachment, questions as to the contents of the instrument without its production are ordinarily inadmissible : yet the law only requires that the memory of the witness shall be so refreshed as to enable him to explain if he desires to do so, and it is for the court to determine whether this has been done, before the impeaching evidence is admitted.

This was a collision case in admiralty. The facts are stated in the opinion of the court.

*Mr. T. D. Lincoln* [*Mr. R. H. Marr* also filed a brief] for appellants.

*Mr. Richard H. Browne* [*Mr. Charles B. Singleton* was with him] for appellees.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This is a suit in admiralty, brought by the owners of the steamboat "Cotton Valley," to recover for the loss of their boat, and certain articles of personal property belonging to Martin H. Kouns alone, in a collision on the Mississippi River

with the steamboat "Charles Morgan." In the original libel filed in the District Court, claim was made only for the value of the boat, and for an itemized account for clothes, jewelry, furniture, etc., of the libellant Kouns. The District Court found the Morgan in fault, and referred the cause to a commissioner to take testimony and report the damages. The commissioner reported that the libellants were entitled to recover the value of the boat, and also the value of stores and supplies, $1,376.-16, and $500 cash in the safe of the boat, and belonging to her, lost at the time of the collision; he also reported that Martin H. Kouns, one of the libellants, should recover the value of a lady's gold watch, $150; of a gentleman's gold watch, $120, and $75 cash lost. The claimant of the Morgan excepted to the allowance for stores and supplies, and for cash in the boat's safe, on the ground that they had not been sued for. The District Court sustained this exception, and gave a decree only for the value of the boat and the allowances by the commissioner to Kouns. From this decree both parties appealed to the Circuit Court. When the case got into the Circuit Court leave was granted the libellants to file a supplemental and amended libel setting up their claim for stores, supplies, and cash, proved before the commissioner in the District Court, but rejected by that court because not included in the original libel.

Upon the hearing in the Circuit Court that court found, among other things, that at the time of the collision the Cotton Valley, bound for Red River, was the ascending boat, and the Charles Morgan, bound for New Orleans, the descending boat; that the collision occurred near Bringier's Point, about three miles below Donaldsonville; that both boats were properly officered and manned, and had proper watches and proper lights set.

"Third. That prior to the collision the Cotton Valley was in her proper position in the river near the left bank, following up the Bringier Point preparatory to rounding the same, while the Charles Morgan was above the point, perhaps in the middle of the river, but heading across and near the point to a wood-yard light, in the bend of the river below the point.

" Fourth.    That when the respective boats were in the positions just described, the Cotton Valley blew one whistle as a signal that she would pass the Charles Morgan to the right, which signal the Charles Morgan answered with one whistle, as a signal that the pilot of the Morgan understood, and would also pass to the right.

" Fifth.    Both boats kept on their respective courses, approaching each other, when the pilot of the Morgan sounded three or four short whistles, stopped the Morgan's engines, and soon commenced backing the wheels, but not enough to stop the Morgan's headway, and without in any wise changing her course to starboard or port.

" Meanwhile, the Cotton Valley, rounding the point, at the three or four short whistles given by the Morgan, understanding the signal as a hail, stopped the engines.

" At this time the boats were within one hundred yards of each other, the Morgan, with her headway and the current, coming straight on without changing her course, the pilot of the Cotton Valley, foreseeing an inevitable collision if he remained still, started the Cotton Valley ahead, sheering to starboard; but this forwarding of the Cotton Valley was too late, for almost immediately the Charles Morgan, head on, struck her on the port side, about twenty-five feet forward of the stern, and at an angle of about sixty degrees, with such force as to cut through her guards into her hull nearly to the kelson, and cause her to sink in about ten minutes.

" Sixth. That the Charles Morgan and her officers were in fault, as the proper position of the boat was nearer the middle of the river, and as her officers disregarded the passing signal given and answered, and made no effort to change the boat's course to the starboard, by which the boats would have been so separated that a collision would have been avoided.

" Seventh. That the Cotton Valley was not in fault, as she was in her proper place as the ascending boat, and as she gave the proper signal for passing.

" The failure of the pilot to understand the signal of three or four short whistles given by the Morgan was not, under the circumstances of the case, a fault; and if the starting of the

Cotton Valley's engines and sheering to starboard when the
Morgan was upon them was an error, it was an error of judg-
ment in extremis, not putting the boat in fault."

Upon these facts a decree was rendered against the Morgan
and her owners and stipulators for the value of the Cotton
Valley, and for the value of the personal property belonging
to Kouns, the same as in the District Court, and also for the
value of the stores, supplies, etc., set forth in the supplemental
libel, $1,376.16. From that decree this appeal was taken.

The record contains a bill of exceptions, which shows that in
the progress of the trial in the Circuit Court the defendants
offered in evidence a certified copy of "the finding of the
board of local inspectors of steam vessels, New Orleans, De-
cember 18, 1878, being their decision in the case of the collision
between the steamers Cotton Valley and the Charles Morgan,
and signed by C. B. Johnson and J. A. Moffat, United States
Local Inspectors." They also offered certain other documents
connected with that proceeding, including an appeal to the
District Inspectors and their decision thereon. To the intro-
duction of this evidence the libellants objected, and their ob-
jection was sustained. To this ruling the claimant of the
Morgan excepted, and the exception was made part of the
record.

It is also shown by another bill of exceptions in the record,
that, after the depositions of Albert Stein, Harry W. Stein,
Sylvester Doss, John B. Evelyn, and Livingston McGeary had
been read on behalf of the claimant of the Morgan, the libel-
lants, for the purpose of impeaching and contradicting their
evidence, offered certain depositions of the same witnesses used
on the trial of certain other suits, growing out of the same
collision, between one Menge and some insurance companies,
to which the claimant was not a party. To the introduction
of this evidence the claimant objected, on the ground that no
basis for offering said purported depositions had been laid, it
not having been shown or pretended that said purported depo-
sitions were ever submitted to the said witnesses, or otherwise
verified as their evidence in said causes; but as, "in the cross-
examination of each of said witnesses in this case, the atten-

tion of the witness was called to the evidence given by him in the cases of *Menge* v. *Insurance Companies,* . . . and the witnesses were specifically examined as to the correctness of said evidence, and admitted having testified therein," and " no objection was made that the evidence offered was not the evidence of said witnesses respectively, or that the same had been imperfectly taken or reported," the depositions were admitted for the purpose for which they were offered. The cross-examination referred to is not set forth in the bill of exceptions. To the admission of this evidence the claimant excepted.

The following positions are taken by the appellants:

1. That the findings of fact are not sufficient to support the decree.

2. That leave to file the supplemental and amended libel should not have been granted, and consequently that the decree should not have included the value of the stores, supplies and money belonging to the Cotton Valley, which were lost.

3. That the record of the proceedings and findings of the board of local inspectors, and the documents connected therewith, were improperly excluded as evidence; and

4. That the depositions taken in the Menge cases were improperly admitted.

1. The objection to the sufficiency of the findings is based on Rule 2 of the Board of Supervising Inspectors of Steam Vessels, which is as follows:

" Should steamers be likely to pass near each other and these signals should not be made and answered by the time such boats shall have arrived at a distance of 800 yards from each other, the engines of both boats shall be stopped; or should the signal be given and not properly understood, from any cause whatever, both boats shall be backed until their headway shall be fully checked, and the engines shall not be again started ahead until the proper signals are made, answered and understood. Doubts or fears of misunderstanding signals shall be expressed by several short sounds of the whistle in quick succession."

The particular specifications of insufficiency are:

1. That it does not appear that the signals for passing had

been made and answered before the boats came within eight hundred yards of each other; and, 2, that the failure of the Cotton Valley to understand the signal of doubt or fear made by the Morgan was a fault on her part.

There is no complaint in the pleadings as to the time when the Cotton Valley made the first signal, and neither party at the hearing below seems to have considered that an important fact in the case. So long as it was made and assented to by the Morgan without any signal of misunderstanding, it will be presumed to have been at the proper distance, as nothing appears to the contrary. The findings show affirmatively that it was understood and assented to by the Morgan.

As the "several short sounds of the whistle" were only to be given in case of doubt or fear of a misunderstanding of signals, it was not necessarily a fault in the Cotton Valley to misinterpret their meaning when made by the Morgan, so short a time after her assent had been given to the signal of the Cotton Valley to pass to the right.

2. Admiralty Rule 24 provides that in all informations and libels, in causes of admiralty and maritime jurisdiction, "new counts may be filed, and amendments, in matters of substance, may be made, upon motion, at any time before the final decree, upon such terms as the court shall impose." 3 How. xiv. In *The Lucille*, 19 Wall. 73, 74, it was decided that an appeal in admiralty from the District to the Circuit Court "has the effect to supersede and vacate the decree from which it was taken. A new trial, completely and entirely new, with other testimony and other pleadings, if necessary, or, if asked for, is contemplated—a trial in which the judgment of the court below is regarded as though it had never been rendered. A new decree is to be made in the Circuit Court." Clearly, under this decision, after an appeal is taken, and the decree of the District Court vacated, a motion to amend, made while the case is pending in the Circuit Court for a new trial on its merits, will be before the final decree; and, under the operation of the rule, we have no doubt the Circuit Court may, in its discretion, permit an amendment of the libel, so as to include a claim for damages growing out of the original cause of action

and litigated in the court below, but rejected because not specified in the pleadings. It is true, that in the case of *The North Carolina*, 15. Pet. 40, 50, it was decided that a libel could not be amended after an appeal, so as to bring in a new claim for damages; but this was before the adoption of the admiralty rules, the decision having been made in 1841, and the rules not taking effect until September 1, 1845. 3 How. xix. The act authorizing the rules was passed August 23, 1842, ch. 188, § 6, 5 Stat. 518, and it is quite possible Rule 24 was suggested by that case. It has long been the practice of the Circuit Court to allow such amendments. *Weaver* v. *Thomson*, 1 Wall. Jr., C. C. 343, decided in 1849 in the Third Circuit; *Lamb* v. *Parkman*, 21 Law Rep. 589, First Circuit, in 1858; *The C. H. Foster*, 1 Fed. Rep. 733, same Circuit; *The Morning Star*, 14 Fed. Rep. 866, Seventh Circuit; *The Oder*, 21 Blatchford, 26, Second Circuit; *Phenix Ins. Co.* v. *Liverpool & Great Western Steamship Co.*, 22 Blatchford, 372, same Circuit. In *Lamb* v. *Parkman*, *supra*, Mr. Justice Curtis, then holding the Circuit Court, said: "The twenty-fourth rule, made by the Supreme Court to regulate the practice of the instance courts of admiralty, applies to this as well as to the District Court. Pursuant to it, amendments in matters of substance may be made on motion, at any time before the final decree, upon such terms as the court shall impose. What amendments shall be allowed, under what circumstances and supported by what proofs they must be applied for, and in what form they must be incorporated into the record, are left to the sound discretion of the court, to be exercised in each case, or to be regulated by written rules of practice, so far as the court may find it useful to frame such rules." In some of the circuits, rules upon the subject have been adopted. The Second Circuit is among them. In the case of *Lamb* v. *Parkman*, Mr. Justice Curtis, after saying that there were no written rules in his circuit, proceeded to state what, from the course of decisions in similar or analogous cases, would, in his opinion, be proper guides to the exercise of the discretion of the court. If proper care is taken to avoid surprise, and to confine amendments in the appellate court to the original subject of controversy, so as not to allow matters out-

side of the general scope of the pleadings below to be brought in, it is difficult to see how any possible harm can come from permitting a libellant to amend his libel in such a way as to give him the full benefit of his suit as it has been begun.

3. The finding of the board of local inspectors, and the documents connected therewith, were properly excluded. The proceeding in which the finding was made was instituted under Rev. Stat. § 4450, for an investigation of the facts connected with the collision, so far as they had a bearing on the conduct of the licensed officers on board the boats, and at most it only showed the opinion of the board upon the subject from the evidence adduced before them. It was offered, to use the language of counsel, "as tending to affect the evidence offered by the libellants to show that the Cotton Valley was in her proper position in the river, and had proper watches and lights set at the time of the collision." Clearly it was not admissible for any such purpose.

4. The specific objection to the depositions in the Menge cases that were offered for the purpose of impeachment, is that they were not exhibited to the witnesses whose testimony was to be impeached upon their cross-examination, or otherwise verified, as the evidence of the witnesses in the former causes. The rule is, that the contradictory declarations of a witness, whether oral or in writing, made at another time, cannot be used for the purpose of impeachment until the witness has been examined upon the subject, and his attention particularly directed to the circumstances in such a way as to give him full opportunity for explanation or exculpation, if he desires to make it. *Conrad* v. *Griffey*, 16 How. 38, 46. If the contradictory declaration is in writing, questions as to its contents, without the production of the instrument itself, are ordinarily inadmissible, and a cross-examination for the purpose of laying the foundation of its use as impeachment would not, except under special circumstances, be allowed until the paper was produced and shown to the witness while under examination. Circumstances may arise, however, which will excuse its production. All the law requires is, that the memory of the witness shall be so refreshed by the necessary inquiries as to enable

him to explain, if he can and desires to do so. Whether this has been done is for the court to determine before the impeaching evidence is admitted. Here the cross examination, on which the right to use the depositions depended, has not been put into the record, but the bill of exceptions shows "that, in the cross-examination of each of said witnesses, the attention of the witness was called to the evidence given by him in the cases of Menge, . . . and the said witnesses were specifically examined as to the correctness of said evidence, and admitted having testified therein." From this, and the failure to incorporate the cross-examination into the bill of exceptions, we must presume that ample foundation was laid for the introduction of the evidence, unless the failure to show the depositions to the witnesses at the time of their cross-examination was necessarily and under all circumstances fatal. The objection is not to the cross-examination as to the contents of the depositions without their production, but to the admission of the depositions after a cross-examination which was, as we must presume, properly conducted in their absence. It is also stated in the bill of exceptions that, " at the offering, no objection was made that the evidence offered was not the evidence of said witnesses respectively, or that the same had been imperfectly taken or reported." This shows that the depositions must have been sufficiently identified as the evidence of the witnesses in the former cases.

In the case, as it comes to us, we find no error.

*The decree of the Circuit Court is affirmed and interest allowed.*