### SCOTT MILLS v. THE STATE.

No. 1987. Decided October 18, 1899.

Motion for Rehearing Decided December 20, 1899.

Decided on the Merits January 24, 1900.

**1. Appeal—Final Judgment.**

An appeal lies only from a final judgment, and if the record contains no final judgment the appeal will be dismissed.

#### ON MOTION FOR REHEARING.

**2. Rehearing—Certiorari—Practice on Appeal.**

Where an appeal has been dismissed for want of a final judgment, a rehearing will be granted upon proper showing that a final judgment was rendered in the court below and a certiorari will be awarded to perfect the record in that respect.

#### ON THE MERITS.

**3. County Convict—Escape from Hirer.**

On a prosecution of a county convict for escape from his hirer or employer, the gist of the offense is that the convict has voluntarily and willfully left the service of his employer.

**4. Same—Evidence Insufficient.**

See opinion for facts held wholly insufficient to support a verdict and judgment of conviction against a county convict for unlawfully and willfully escaping from his employer.

APPEAL from the County Court of Nacogdoches. Tried below before Hon. V. E. MIDDLEBROOK, County Judge.

Appeal from a conviction of a county convict for unlawfully and willfully escaping from his hirer; penalty, twenty-four hours confinement in the county jail.

The opinion states the case.

*Ingraham, Ratcliff & Huston,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of a misdemeanor, and he prosecutes this appeal. There is no final judgment in the record, and consequently the appeal must be dismissed; and it is accordingly so ordered.

*Dismissed.*

After the case was dismissed as above, the following motion was filed by appellant's counsel, viz:

"Scott Mills v. The State of Texas. In Court of Criminal Appeals, Tyler, Texas:

"And now comes the appellant and moves the court to grant him a rehearing in this case. This case being on appeal at a former day of the present term, the appeal was dismissed because it did not appear that any final judgment had ever been rendered in the case from the transcript filed herein, but appellant says that in truth and in fact, on the 26th day of July, 1899, in the County Court of Nacogdoches County, a final judgment was rendered in said cause and he attaches hereto a certified copy of said final judgment, marking the same 'Exhibit A,' and prays that the same be read and considered as a part of this motion.

"And appellant further says that said final judgment was omitted from the transcript by mistake or oversight of the clerk of the County Court of Nacogdoches County; that it was not omitted purposely. And appellant prays for a writ of certiorari to have a more perfect transcript sent up in said cause to issue, or that the copy of the final judgment be held to cure the error in said transcript and that the appeal be reinstated and this cause be heard upon its merits, as he will ever pray.

"INGRAHAM, RATCLIFF & HUSTON,
"Attys. for Appellant.

"I, Geo. F. Ingraham, of the firm of Ingraham, Ratcliff & Huston, and of counsel for Scott Mills, do swear that the facts set out in the foregoing motion are true to the best of my knowledge and belief, and that before the transcript in this case was sent to Tyler, I examined it, and also another transcript in a case of O'Quinn, appellant, from

Nacogdoches County, on the same evening, and that in examining the two transcripts, one after another, the fact that the final judgment in the Scott Mills case was omitted entirely escaped my attention, when looking over said transcript to see if it was correct.

"GEO. F. INGRAHAM.

"Sworn to and subscribed before me this the 25th day of October, 1899.

"F. D. HUSTON,
"Notary Public Nacogdoches County, Texas."

[Exhibit "A," which was attached, showed a final judgment.—Reporter.]

ON MOTION FOR REHEARING.

BROOKS, JUDGE.—At a former day of this term this cause was dismissed, and now comes before us on motion for rehearing, setting up the fact that certain material portions of the record were omitted from the transcript now before us. Upon the showing made by appellant, the motion for rehearing is granted, and the clerk is ordered to issue a writ of certiorari to the clerk of the County Court of Nacogdoches County, directing said clerk to make and send to this court a perfect transcript of all the proceedings had on the trial of this case, as required by law; and the clerk of this court is hereby ordered, upon the receipt of said transcript, to forward the same to the clerk of this court at Dallas.

DAVIDSON, Presiding Judge, absent.

BROOKS, JUDGE.—The appeal in this case was dismissed at the Tyler term, 1899; and on appellant's application for certiorari, same was granted, and the record is now perfected and comes before us for decision.

Appellant was convicted under an information charging substantially: That defendant * * * "was a county convict who had theretofore, in said county and State, been duly convicted of a misdemeanor, and after conviction had been hired under authority of law to one H. W. Armstrong, for the payment of the fine and costs adjudged against the said Scott Mills, on said conviction; and that on the day and year first aforesaid * * * said Scott Mills did unlawfully and willfully escape from said H. W. Armstrong, his employer, during the time for which he had been so hired to the said H. W. Armstrong," etc. The jury assessed his punishment at twenty-four hours in the county jail.

In the view we take of this case we deem it only necessary to discuss one question,—whether or not the verdict of the jury is supported by the evidence.

H. W. Armstrong, prosecutor, testified substantially: "Scott Mills

41st Crim. Rep.—29

was making a crop at T. P. Coran's farm, this year. I heard he was in some trouble and I went over and told him to go to town and give up, and I would see him through if it cost me my wagon and team. Defendant came over to my house and stayed all night; and the next day we went to town together, and he plead guilty to the charges against him. I took him out on a convict bond. This bond is signed by myself, R. J. McCall, T. W. Williams, and Scott Mills. * * * I never took any personal supervision of defendant after I made his convict bond. I never furnished him any clothing, food, or medicine, either before or after I made his bond. He never did work at my house or on my farm. He had a crop this year on Mr. Coran's place, two miles from where I live; and the understanding between myself and defendant was, both before and after I made this convict bond, that he was to work his crop at Coran's and make the money out of same and pay off the bond. I never paid the county judge $1.50 for approving defendant's convict bond; defendant paid the county judge his fees for examining and approving same." On being asked if he ever gave Scott Mills permission to go elsewhere than to the crop (as spoke of above), he said: "I told him to go and work the crop (as never gave him permission to go elsewhere."

The defendant, Scott Mills, testified substantially: "Before I was convicted Armstrong came over to Coran's and told me he had come over to see about my trouble; and if I would go to town and give up he would see me through, if it cost his wagon and team. I went over to Armstrong's that evening and stayed all night, and next day we went to town, and I plead guilty to the case against me. He made bond for me, with J. R. McCall and T. W. Williams as sureties. The understanding I had with Mr. Armstrong was, that I was to pay him out of my crop on Coran's place, when I made the money out of the crop. After Armstrong made the bond he turned me loose; he never gave any orders whatever, or took any personal supervision of me. He never furnished me any provisions or anything else. He never asked or told me to work for him at any time after the bond was made, and I went back to Coran's, where I was living. I heard another charge would be brought against me, and I told Coran, if that were true, I could not pay him what I owed him and also pay off the Armstrong bond out of my crop; that if he would take the crop to pay off my indebtedness to him, I would go and hunt work in order to make the money to pay off the Armstrong bond, which was not due until November, 1899. Coran took the crop and I left that night and came to town, took the train and went to Louisiana, where my brother-in-law lives, and engaged in varnishing bedsteads. I also went to Arkansas to see some of my relatives."

Article 234, Penal Code, under which this prosecution is based, provides: "Any person who has been convicted of a misdemeanor or petty offense, and afterwards hired under authority of law, who shall escape from his employer or person hiring him during the term of which he

may have been hired, shall be punished by imprisonment in the county jail for a term not exceeding two years."

We have heretofore held that one hired out as a county convict is not guilty of an escape in absconding when the hirer permits him to go at large or takes no personal supervision or control of him, but relies upon his paying the fine and costs; that the gist of the offense under the above article is, that the convict has voluntarily and willfully left the service of his employer. Porter v. State, 34 Texas Crim. Rep., 364; Simmons v. State, 40 S. W. Rep., 968. The facts as above stated show that the hirer, Armstrong, never had actual control, supervision, or management of the convict, but he was permitted to go upon another farm than that of the hirer and there make a crop. Armstrong at no time had control and management or supervision of appellant, and we can not see how it can be claimed that appellant violated the provisions of this article in leaving. In other words, in order for a convict to violate the spirit and letter of the article, he must escape "from his employer or person hiring him during the term of which he may have been hired." Certainly it can not be insisted that the above facts show such a condition; but on the other hand, the converse thereof. Defendant did not escape from his employer, but was working on a farm other than that of his employer and voluntarily went away.

Because the evidence is not sufficient to support the conviction, the judgment is reversed and the cause remanded.

*Reversed and remanded.*