## THE TOKAI MARU.

(Circuit Court of Appeals, Ninth Circuit.　September 5, 1911.)

### No. 1,969.

1. FISH (§ 16*)—STATUTE PROHIBITING ALIENS FROM FISHING IN ALASKA WATERS—CONSTRUCTION AND ENFORCEMENT.

Act June 14, 1906, c. 3299, 34 Stat. 263 (U. S. Comp. St. Supp. 1909, p. 1080), makes it unlawful for any nonresident alien or any "company corporation or association" not organized in the United States or authorized thereto to catch fish in the waters of Alaska, except with rod, spear, or gaff, and provides that every person, company, etc., violating such provision, shall be fined, which fine "shall be a lien against any vessel or other property of the offending party or which was used in the commission of such unlawful act"; also, that every vessel used or employed in the violation of the act shall be liable to a fine, "and may be seized and proceeded against by way of libel in any court having jurisdiction of the offense." *Held* that, where the crew of ·a vessel violated the act, the prosecution and conviction of its members was not an essential prerequisite to the enforcement of the government's right against the offending vessel, but that they could be tried, fines imposed against them and the vessel, and the lien therefor established in the same proceeding in a court of competent jurisdiction.

[Ed. Note.—For other cases, see Fish, Cent. Dig. § 31; Dec. Dig. § 16.*]

2. FISH (§ 13*)—STATUTE PROHIBITING ALIENS FROM FISHING IN ALASKA WATERS—CONSTRUCTION.

Act June 14, 1906, c. 3299, § 1, 34 Stat. 263 (U. S. Comp. St. Supp. 1909, p. 1080), which makes it unlawful for aliens "to catch or kill, or attempt to catch or kill, except with rod, spear or gaff, any fish of any kind or species whatsoever in any of the waters of Alaska under the jurisdiction of the United States," cannot be construed as prohibiting only commercial fishing, and as permitting the alien crew of a foreign vessel to take fish in violation of its provisions for their own use.

[Ed. Note.—For other cases, see Fish, Dec. Dig. § 13.*]

3. FISH (§ 14*)—STATUTE PROHIBITING ALIENS FROM FISHING IN ALASKA WATERS—CONSTRUCTION—"COMPANY."

The officers and crew of a vessel composed entirely of aliens may be considered a "company" within the meaning of the statute, and a single fine imposed upon them for its violation and made a lien on the vessel.

[Ed. Note.—For other cases, see Fish, Dec. Dig. § 14.*

For other definitions, see Words and Phrases, vol. 2, pp. 1347–1350.]

4. TREATIES (§ 11*)—OPERATION AS TO SUBSEQUENT LAWS.

The power of Congress to enact laws for subsequent observance is not restricted by prior treaties with foreign nations.

[Ed. Note.—For other cases, see Treaties, Cent. Dig. § 11; Dec. Dig. § 11.*]

Morrow, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Third Division of the District of Alaska.

Suit by the United States by libel of information against the schooner Tokai Maru, Choemon Ki Kuchi, claimant. Decree for libelant, and claimant appeals. Reversed.

The amended libel of information, on which the decree appealed from is based, contains the following averments:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"(1) That F. J. Haake, an officer in the revenue cutter service of the United States in command of the United States revenue cutter Perry, heretofore, to wit, on the 28th day of June, 1910, at Kalekta Bay, an inlet of Bering Sea, and within the district of Alaska, and the waters thereof, seized on behalf of the United States the schooner Tokai Maru, a Japanese schooner of about 90 tons burden, in command of Capt. Matsutaro Numazaki, her boats, tackle, anchors, ropes, lines, sails, stores, apparel, equipment, furniture, and cargo.

"(2) That said schooner Tokai Maru, her tackle, apparel, furniture, and cargo, after being seized as aforesaid, was by the said F. J. Haake immediately brought into the port of Unalaska, in the district of Alaska, and there delivered into the custody of the United States marshal of the Third division of the district of Alaska, and that all of said property ever since said time has been, and now is, in the possession of and held by said United States marshal at Unalaska, within said district and division, and within the admiralty and maritime jurisdiction of the United States and of this honorable court.

"(3) That the said F. J. Haake was then and there duly commissioned and authorized by the Secretary of Commerce and Labor of the United States, acting through the Secretary of the Treasury and the Secretary of the Navy of the United States, to make said seizure, and that said seizure was made by the said F. J. Haake under and by virtue of said authority.

"(4) That all of said property was then and there seized for the following causes, which are hereby alleged to be the true facts: That the captain, officers, and crew of the said vessel did on the 28th day of June, 1910, and for some time immediately prior thereto, within the district of Alaska, and the waters thereof, and within the admiralty and maritime jurisdiction of the above-entitled court, willfully and unlawfully catch and kill, and attempt to catch and kill, fish by means other than with rod, spear, and gaff, the said captain, officers, and crew then and there not being citizens of the United States, nor persons who have declared their intention to become such, nor bona fide residents therein, and then and there not being a company, corporation, nor association, organized and authorized to transact business under the laws of the United States, or of any state, territory, or district thereof, and then and there not being employed by any person, firm, corporation, nor association, lawfully entitled to fish in the waters of Alaska, and then and there not being natives of Alaska, contrary to the form of the statutes in such cases made and provided, to wit, in violation of the act entitled, 'An act to prohibit aliens from fishing in the waters of Alaska,' approved June 14, 1906, and against the peace and dignity of the United States of America.

"(5) That the said vessel, her tackle, apparel, furniture, and cargo were used and employed by her captain, officers, and crew in unlawfully catching and killing fish within the waters of Alaska, as aforesaid.

"(6) That part of the tackle, apparel, furniture, and cargo of said vessel consisted of firearms, ammunition, and 117 fur sealskins. That said firearms, ammunition, and fur sealskins are the property of the captain, officers, and crew of said vessel."

The seventh and eighth paragraphs recite criminal proceedings and the conviction of the captain and crew of the vessel and the nonpayment of fines imposed by a commissioner acting as a justice of the peace of Alaska. The ninth and last paragraph contains formal averments of jurisdictional facts. The District Court received proof of the criminal proceedings and other evidence upon which findings were made sustaining all the averments of the amended libel of information, and thereupon rendered a decree subjecting the vessel to a fine of $500 and to a lien for fines against the captain and each member of the crew amounting to the additional sum of $19,000. The decree condemned, not only the vessel and her equipments, but also 117 fur sealskins found on board of her.

The law applicable to the case is the act of Congress approved June 14, 1906, entitled "An act to prohibit aliens from fishing in the waters of Alaska." Act June 14, 1906, c. 3299, 34 Stat. 263 (U. S. Comp. St. Supp. 1907, p. 828; Supp. 1909, p. 1080). The first section of the statute declares that it shall be unlawful for any alien person, company, corporation, or association

to catch or kill or attempt to catch or kill, except with rod. spear, or gaff. fish of any kind or species whatsoever in the waters of Alaska under the jurisdiction of the United States. The second section provides that every person, company, corporation, or association found guilty of a violation of any provision of this act shall for each offense be fined not less than $100 nor more than $500, which fine shall be a lien against any vessel or other property of the offending party, or which was used in the commission of such unlawful act, and that every vessel used or employed in violation of any provision of this act shall be liable to a fine of not less than $100 nor more than $500, and may be seized and proceeded against by way of libel in any court having jurisdiction of the offense. Section 4 of the act contains, among other provisions, the following: "If any foreign vessel shall be found within the waters to which this act applies, having on board fresh or cured fish and apparatus or implements suitable for killing or taking fish, it shall be presumed that the vessel and apparatus were used in violation of this act until it is otherwise sufficiently proved."

James Kiefer, for appellant.
Robt. T. Devlin, U. S. Atty., Earl H. Pier, Asst. U. S. Atty., George R. Walker, U. S. Atty., and Benjamin L. McKinley, Asst. U. S. Atty.

Before GILBERT and MORROW, Circuit Judges, and HANFORD, District Judge.

HANFORD, District Judge (after stating the facts as above). [1] One of the chief contentions of the appellant is that the District Court could not rightfully subject the property seized to liability for the fines imposed upon the captain and crew, because the justice of the peace had no jurisdiction of the alleged offense. We hold, however, that the prosecution and conviction of the captain and members of the crew is not an essential prerequisite to the enforcement of the government's right against the offending vessel (The C. G. White, 64 Fed. 579, 12 C. C. A. 314), and we consider the present suit to be an original cause brought in a court of competent jurisdiction, and that it is not ancillary nor supplementary to the criminal proceedings before the justice of the peace. If a vessel should be captured in flagrante derelicto and her captain and crew should be successful in avoiding prosecution by evading arrest, the statutory lien would not be discharged by such evasion, and it would require an unreasonable construction of the statute to place the government in the embarrassing situation of a holder of a seized vessel without right to proceed to a realization of the benefit contemplated by the creation of the lien.

It is to be observed that the judgment of the justice of the peace is not pleaded as a separate and distinct cause of action, the liability of the vessel, as a guilty thing for a fine and her liability under the lien clause of the statute are run together in the amended libel of information and the judgment is just thrown in as a makeweight; and as the answer contains no affirmative plea of payment, or satisfaction of the judgment, there is no issue raised by the pleadings respecting the criminal proceedings which is necessarily material to be considered. The case is here for a trial de novo. This court may direct the entry of a proper decree notwithstanding errors of the trial court in receiving incompetent evidence, or in its findings based thereon. Deeming it unnecessary to decide the question involved in the col-

lateral attack here made upon the judgment of the justice of the peace, all of the pleadings and evidence referring to that judgment will be treated in this opinion as surplusage and eliminated from the case.

The libel of information, after eliminating therefrom all of paragraphs 7 and 8, contains averments of all the jurisdictional facts necessary to sustain an original independent suit by the government to enforce the statute by collecting a fine and foreclosing a lien against the vessel and her equipments, and specifically charges violations of the statute for which the prescribed fine and lien attach to the vessel. These averments and charges are sustained by admissions and by uncontradicted evidence proving that the captain and crew are aliens, and not inhabitants of Alaska; that the vessel was seized by a revenue cutter of the United States while at anchor within Kalekta Bay, Alaska, less than three miles from the shore; that there was then found on board of her shoal water fish recently caught, some of them had been recently salted and others were alive, and fishing lines with sinkers and baited hooks recently used, and there was no fishing rod, spear, or gaff on board. These facts in connection with failure to prove that the fish found on the vessel were obtained elsewhere, independently of the statutory presumption, afford convincing evidence that the fish were taken from the waters of Alaska within the jurisdiction of the United States.

[2] It is contended, however, that only a few fish were found in the vessel, that the vessel was on a sealing cruise, and not engaged in commercial fishing, and that the statute should not be construed as prohibiting fishing by aliens to supply their personal need for food. This ground of defense cannot prevail. The statute is clear and unambiguous. It prohibits aliens from taking *any* fish in the waters of Alaska "except with rod, spear, or gaff," and the court is not authorized to add other exceptions.

[3] It is not probable that all of the persons composing the crew personally participated in the unlawful fishing, and there is some evidence to the contrary, and no evidence to single out one or more of the crew as individual offenders. Therefore this court holds that there is a failure of proof necessary to justify the imposition of a fine against either as an individual person. The captain and his crew, however, were an aggregation of persons constituting the ship's company, engaged in an adventure for their common benefit. The law prescribes:

"That every person, *company*, corporation, or association found guilty of a violation of any provision of this act * * * shall, for each offense, be fined not less than $100, nor more than $500. * * *"

This court holds that, whilst the evidence is insufficient to justify separate punishment of individual members of the crew, the law authorizes the imposition of a single fine against the ship's *company* in addition to the fine imposed against the vessel as a distinct entity, and, in view of all the circumstances alleged and proved, it is our opinion that fines for the aggregate amount of $1,000, in addition to the large amount of taxable costs, will be reasonable and amply sufficient to vindicate the law in this instance.

The 117 sealskins found on board the vessel were not·used in any way in violation of law, and there is no distinct admission in the pleadings, nor satisfactory evidence proving, that they were owned by either or all of the persons engaged in taking fish unlawfully. Therefore there appears to be no legal ground for holding them subject to a lien for the fines.

The appellant objects to the taxation of costs including the expenses of keeping the property in custody, but without showing any legal ground for exemption from the general rule subjecting defeated litigants to liability for costs and necessary expenses incidental to the litigation; and the court has no authority to relieve him therefrom.

[4] The remaining defensive argument is that:

"By the first and second articles of the treaty between Japan and the United States, concluded November 24, 1894, proclaimed March, 1895 (29 Stat. 848), the officers and crew of this schooner are given the same rights in Alaskan waters, with reference to fishing, as are given to our own citizens. [And] that statutes which discriminate against aliens, in violation of their treaty rights, are void. In re Ah Chong [C. C.] 2 Fed. 733; In re Tiburcio Parrott [C. C.] 1 Fed. 481; Yick Wo v. Hopkins, 118 U. S. 356 [6 Sup. Ct. 1064] (30 L. Ed. 220)."

The authorities here cited do no more than·affirm the fundamental principle that state laws and municipal ordinances may not override national treaties; and they give no sanction to an argument questioning the validity of a national law. The power of Congress to enact laws for subsequent observance is not restricted by prior treaties with foreign nations. The Chinese Exclusion Case, 130 U. S. 581, 9 Sup. Ct. 623, 32 L. Ed. 1068. Moreover, the articles of the treaty referred to contain no allusion to fishing privileges, and do not purport to grant any right to sea rovers to resort to American fishing grounds for the purpose of taking fish for their own consumption or for any purpose whatever.

The decision of the District Court is reversed, and the cause will be remanded, with directions to vacate the decree appealed from, to release the fur sealskins, and to enter a new decree for a fine of $500 against the vessel, a fine of $500 against her captain and crew as a company and for costs, and to enforce such decree by appropriate proceedings.

MORROW, Circuit Judge (dissenting). ·I am unable to agree with so much of the judgment of the majority of this court as imposes a fine of $500 against the "ship's company." No such cause of action was alleged in either the original or amended libel, and no such cause of action has been claimed or suggested in this court by either party to the action.

The Japanese sealing schooner Tokai Maru was found on June 28, 1910, in the waters of Alaska, near Kelekta Bay, Unalaska, by the officers of the United States revenue cutter Perry, with some 20 fish on board the schooner, some of which had been salted down. Fishing tackle was also found on board, such as lines, hooks, and sinkers, but no rods, spears, or gaffs. One fish line was wet when found, indicating that it had been recently in use. The captain of the revenue cutter

seized the schooner, and arrested the officers and crew, consisting of 38 men, all natives of the empire of Japan, for a violation of the act of June 14, 1906, entitled: "An act to prohibit aliens from fishing in the waters of Alaska." Act June 14, 1906, c. 3299, 34 Stat. 263 (U. S. Comp. St. Supp. 1909, p. 1080). The schooner, together with the officers and crew, were taken by the officers of the revenue cutter to Unalaska. The schooner was turned over to the United States marshal, and on July 8, 1910, a complaint was filed in the justice's court at Unalaska, charging each and every officer and member of the crew of the schooner by name with a violation of the said act of June 14, 1906. Upon a trial in the justice's court the officers and crew of the vessel were found guilty as charged in the complaint, and a judgment was thereupon entered, fining each officer and member of the crew the sum of $500; the fines amounting in the aggregate to the sum of $19,000. It was further adjudged that, in case any one of the defendants should fail or refuse to pay said fine of said $500, he should be confined in the United States jail at Valdez, Alaska, until such fine was paid, not to exceed one day for each $2 of said fine, and that the cost of the prosecution should be taxed proportionately to each of the defendants. This judgment was entered in the justice's court on July 10, 1910, and the defendants thereupon imprisoned under its terms. On July 11, 1910, a libel was filed in the United States District Court for the District of Alaska against the schooner, charging that her officers and men had been engaged in unlawfully fishing with line, leaden sinker, and hooks within three miles of Unalaska Island, in Alaska; that, on account thereof, said officers and men had been convicted and fined in the sum of $19,000 and costs; that the United States had a lien upon said schooner, her tackle, apparel, furniture, and cargo for said amount, and praying that the vessel be sold to pay said fines and in discharge of said liens.

Subsequently an amended libel was filed containing two causes of action: The first cause of action alleged the seizure of the vessel, her tackle, apparel, furniture, and cargo to recover a fine of not less than $100 and not more than $500 upon the charge, in substance, that the captain, officers, and crew of the vessel had unlawfully caught and killed fish in the waters of Alaska by means other than with spear, rod, or gaff, said officers and crew being aliens and not qualified under the act of June 14, 1906, to catch and kill fish in the waters of Alaska by such other means.

The second cause of action alleges that a complaint had been filed in the justice's court for the Aleutian Island precinct, district of Alaska, against the captain, officers, and crew of the vessel, numbering 38 in all, charging them with unlawfully fishing in the waters of Alaska in the manner and form before alleged. This complaint is set forth in full in the libel. It is further alleged that a warrant had been issued for the arrest of the defendants, and under and by virtue thereof they had been brought before the justice's court, and such proceeding had that the defendants had been duly tried in said court before a jury, and found guilty of the crime charged in the complaint. It is alleged that the court thereupon pronounced sentence and rendered

judgment against the defendants that they each to pay a fine of $500; that said fine amounted in the aggregate to the sum of $19,000. It is further alleged that it was the judgment of the court that each of the defendants stand committed until his fine be paid in the manner and form provided by law. It was alleged that the schooner was liable to a fine of not less than $100 or more than $500, and subject to condemnation and sale for the payment thereof, and also for the payment of the fines imposed against the captain, officers, and crew of the vessel, amounting to the sum of $19,000. It was alleged that these fines imposed upon the officers and crew of the vessel were liens against the vessel, her tackle, apparel, furniture, and cargo in favor of the United States, and that the said vessel, her tackle, apparel, furniture and cargo were subject to condemnation and sale for the satisfaction of said liens.

The prayer of the amended libel was that the court pronounce a fine against the vessel in the sum of $1,000; that the schooner, her tackle, apparel, furniture, and cargo be condemned by the said decree of the court, and sold to satisfy the fine against the vessel, and also the liens for the fines imposed against the captain, officers, and crew of the vessel in the justice's court in the sum of $19,000.

The answer of the claimant of the schooner denied the material allegations of the libel; and specifically that the proceedings before the justice of the peace were in accordance with law; denied that any valid complaint was filed in said court against the captain, officers, and crew of said schooner or any of them; denied that they were lawfully tried; denied that they, or any of them, were lawfully convicted of any offense, but alleged that all the purported legal proceedings before the said justice of the peace were without jurisdiction and void.

The court entered a decree in favor of the United States upon both causes of action, viz., a decree for $500 as a fine against the vessel, and a decree for $19,000 for the fines imposed upon the officers and. crew of the vessel, and for costs.

The decree is as follows:

"That the fines, amounting to $500 each and aggregating the sum of $19,000, imposed against the captain, officers, and members of the crew of said vessel, 38 in all, by the judgment of the justice's court for the Aleutian Island precinct, Third division, district of Alaska, as set forth in the amended libel of information herein, be, and they are hereby declared to be, liens in favor of the United States against said vessel, her tackle, apparel, furniture, and cargo, and the said liens are declared to be, and they are hereby, foreclosed. That said schooner Tokai Maru, her tackle, apparel, furniture, and cargo, including the firearms, ammunition, and 117 fur sealskins, constituting a part of said cargo, be, and they are hereby, condemned and ordered sold to satisfy the said liens, amounting to $19,000, and said fine of $500 imposed against said vessel."

The decree then orders the vessel, her tackle, apparel, furniture, and cargo, including the firearms, ammunition, and 117 fur sealskins, constituting a part of said cargo, to be sold by the United States marshal, and the proceeds arising from the sale of said vessel, her tackle, apparel, furniture, and cargo be applied, first, to the payment of the fine imposed against the vessel; second, to the payment and satisfaction of the said fines imposed by the justice's court against the

captain, officers, and crew of said vessel. By the judgment of this court the decree of the District Court imposing a fine of $500 upon each of the officers and crew of the vessel, amounting in the aggregate to $19,000, is reversed; and, in lieu thereof, a decree is directed to be entered in the sum of $500, being the amount of a fine imposed upon the captain and crew of the vessel as a "company."

The first objection to this decree is that the evidence is not sufficient to sustain it. In my opinion the justice's court had no jurisdiction of the case against the officers and crew of the vessel under the act of June 14, 1906. The judgment of that court was therefore void, and, being void, it was not evidence against the vessel in the District Court. But it is said the case is here for a trial de novo, and this court may direct the entry of a proper decree notwithstanding errors of the trial court in receiving incompetent evidence. Conceding such to be the jurisdiction of this court, nevertheless there must be evidence to support such a decree. The evidence consists in the finding of some 20 fish on board the vessel, some of which had been salted down; the finding also of fishing tackle, such as lines, hooks, and sinkers, one fish line being wet when found, indicating that it had been recently used. No rods or gaffs were found on board. This evidence was sufficient to warrant the seizure of the vessel under section 4, Act June 14, 1906, c. 3299, 34 Stat. 263 (U. S. Comp. St. Supp. 1909, p. 1080), which provides that:

"If any foreign vessel shall be found within the waters to which this act applies. having on board fresh or cured fish. and apparatus or implements suitable for killing or taking fish, it shall be presumed that the vessel and apparatus were used in violation of this act until it is otherwise sufficiently proved."

But this presumption does not run against the officers and crew of the vessel, either individually as determined by the decree of the District Court, or collectively as "ship's company" as determined by this court; and without this presumption the evidence is clearly insufficient to support either decree.

The second objection to this decree is that it is not determined whether the justice's court at Unalaska had jurisdiction of prosecutions under the act of June 14, 1906. It is merely held that the prosecution and conviction of the captain and members of the crew is not an essential prerequisite of the enforcement of the government's right against the offending vessel. But the fact remains that the decree of the District Court against the officers and crew of the vessel was based upon the judgment entered in the justice's court at Unalaska. If the justice's court had no jurisdiction of the case, as I think it had not, then that part of the decree of the District Court was not only not supported by evidence, but the libel against the vessel charged no cause of action for which it was liable.

The third objection to the decree is that it is upon a trial de novo in this court without regard to the established rules of practice governing such a trial. A trial de novo is a trial anew, or a second trial. Ex parte Morales (Tex. Cr. App.) 53 S. W. 107, 108; 8 Am. & Eng. Encyc. 832, 13 Cyc. 786. "This is, in the same manner, with the same effect, and upon the same issues tried in the court below." Paul **v.**

Armstrong, 1 Nev. 96. See, also, People v. County of El Dorado, 10 Cal. 19; Adams v. Oakes, 20 Johns. (N. Y.) 282. But a rehearing in admiralty is regulated by established rules. The Charles Morgan, 115 U. S. 69, 75, 5 Sup. Ct. 1172, 29 L. Ed. 316. The twenty-fourth admiralty rule (29 Sup. Ct. xli), as prescribed by the Supreme Court of the United States, provides:

"And new counts may be filed, and amendments in matters of substance may be made, upon motion, at any time before the final decree, upon such terms as the court shall impose."

With respect to proceedings in the appellate courts in admiralty cases, the practice has been changed from time to time by acts of Congress. 1 Enc. of U. S. Supreme Court Reports, 176, 194; Munson S. S. Line v. Miramar S. S. Co., 167 Fed. 960, 93 C. C. A. 360. With respect to appeals from the District Court of Alaska, see In re Cooper, 143 U. S. 472, 12 Sup. Ct. 453, 36 L. Ed. 232. In view of the uncertainty as to the practice in admiralty cases in the Circuit Court of Appeals under act March 3, 1891, c. 517, 26 Stat. 826 (U. S. Comp. St. 1901, p. 547) this court in 1900 adopted the rules previously adopted in the Circuit Court of Appeals in the Second Circuit (100 Fed. v). Rules 7 and 8 provide as follows:

"7. New Allegations, etc. Upon sufficient cause shown, this court, or any judge thereof, may allow either appellant or appellee to make new allegations or pray different relief or interpose a new defense, or make new proofs. Application for such leave may be made at any time after the perfecting of the appeal to this court, and within fifteen days after the filing in this court of the apostles, and upon at least four days' notice to the adverse party or his attorney of record.

"8. New Pleadings—New Testimony. If leave be granted to make new allegations, pray different relief, or interpose a new defense, the moving party shall within ten days thereafter, serve such new pleading, duly verified on the adverse party, who shall, if such pleading be a libel, within twenty days answer on oath."

In the present case no proceedings have been taken under these rules or otherwise to amend the libel by making new allegations or in stating a new cause of action, nor has there been any prayer for other or different relief than that contained in the amended libel, upon which the decree was entered in the District Court. I am therefore of the opinion that no new decree should be entered by this court without such proceedings and opportunity offered the claimant to appear and answer this new cause of action.

There is still another objection to the decree of this court. The judgment of the District Court was that the officers and crew of the vessel should be each fined the sum of $500, and that they should be confined in the United States jail at Valdez until such fine should be paid, not to exceed one day for each $2 of said fine. It appears from the record that the defendants were imprisoned on the 11th day of July, 1910. It appears, further, that on the 2d of February, 1911, these defendants were still in jail, and the presumption is that they continued in jail until the fine was fully paid. The penalty of the statute as determined by the judgment of the court has, therefore, been satisfied as against the individual defendants, and it seems to me that

this should be held as a satisfaction of the penalty against them as the "ship's company."

The decree also appears to me to be inconsistent. It discharges the fur sealskins found on board the vessel from the seizure and lien of the decree. The statute makes the fine a "lien against any vessel or other property of the offending party, or which was used in the commission of the unlawful act." The answer of the claimant admits that "part of the firearms, ammunition and fur sealskins are the property of the captain, officers and crew of said schooner." If a decree is to be entered against the captain, officers, and crew of the vessel as a company, to be enforced against the vessel as a lien, there does not appear any good reason why the fur sealskins should be released from the lien and liability.

In my opinion the decree should be reversed, with instructions to dismiss the libel as to the cause of action based upon the judgment entered in the justice's court on the ground that that court had no jurisdiction of the case, and a decree entered against the vessel in favor of the United States for $500 and for costs, this decree to be a lien upon the vessel alone.