**UNITED STATES v. WOLF.**

Crim. A. No. E–5165.

United States District Court
W. D. Pennsylvania.

Feb. 6, 1952.

Edward C. Boyle, U. S. Atty., Pittsburgh, Pa., George Rowley, Asst. U. S. Atty., Greenville, Pa., for plaintiff.

Vincent M. Casey, Margiotti & Casey, Pittsburgh, Pa., for defendant.

STEWART, District Judge.

Defendant was charged in forty-one counts of wilfully and knowingly aiding and assisting in, and counseling, procuring and advising the preparation and presentation to the Collector of Internal Revenue of false and fraudulent income tax returns in violation of Section 3793(b)(1) of the In-

ternal Revenue Code, 26 U.S.C. § 3793 (b)(1). Three of the counts were dismissed at the trial of the case and the jury, on September 28, 1951, returned a verdict of guilty on thirty-two of the remaining thirty-eight counts.

Subsequently, on October 1, 1951, a motion for a new trial based upon six separate grounds was filed by defendant. However, at the oral argument of the motion and in his brief, counsel for defendant relied on three grounds, namely, that the Court erred (1) in denying defendant's motion for withdrawal of a juror and continuance of the case because during the trial at least two of the jurors had read prejudicial newspaper articles; (2) in sustaining the Government's objection to introduction in evidence of Internal Revenue Forms 885 and 885A; and (3) in denying defendant's motion for a judgment of acquittal on counts where it appeared from the evidence that the taxpayer, personally, had not signed the return, but that someone else had signed on his behalf.

I.

During the course of trial, counsel for defendant called two newspaper articles to the Court's attention and suggested that they required a mistrial. Prior to making any ruling relating to the prejudicial character of the articles in question, the Court interrogated each of the jurors separately in chambers. Each was examined under oath and was asked whether he had seen or read any articles concerning the trial. Two of the jurors stated that they had seen and read parts of the articles in question. In addition, one of the alternate jurors stated that he had read the articles in question. However, in view of the fact that the alternate juror was dismissed at the conclusion of the Court's charge to the jury and had no part in the verdict, the effect of the articles on him is not material. The two jurors stated that they remembered little of what the articles contained; but the alternate did recall most of what had been printed therein. However, all three stated, under oath, that they would not be influenced by the articles in any way. In

addition, since it appeared that the only part of the articles that could be prejudicial and the only part so considered by counsel for defendant related to a statement in one article to the effect that the defendant was charged with defrauding the Government of $150,000 and a statement in the other to the same effect, except that the amount of tax loss to the Government was stated to be $175,000, the Court informed each of the two jurors and the alternate that the articles were inaccurate and that the Government had sustained no loss by virtue of the alleged activity of the defendant, but, on the contrary, had received all of the additional taxes due from the taxpayers whose returns were involved in the case. Each of the jurors had been previously instructed to consider only the evidence presented in the courtroom and to disregard anything they heard or read outside of the courtroom. This instruction was repeated to each juror after the examination.

When it appeared that two of the jurors had read parts of the articles in question, the defendant moved for the withdrawal of a juror on the ground that the articles were prejudicial to the defendant and would make a fair trial impossible. Defendant's motion, we believe, was properly denied. A motion of this character is addressed to the discretion of the trial court. United States v. Carruthers, 7 Cir., 1945, 152 F.2d 512; United States v. Hirsch, 2 Cir., 1934, 74 F.2d 215; Stunz v. United States, 8 Cir., 1928, 27 F.2d 575. On appeal, the burden is upon appellant to show an abuse of discretion and prejudice to him. United States v. Carruthers, supra. We denied the defendant's motion to withdraw a juror for the reason that we were convinced that the defendant was not prejudiced by the articles, particularly in view of the statements of the two jurors, under oath, to the effect that they remembered little of the contents of the articles and would not be influenced by them, and in view of the additional instructions and explanation given to each of the jurors by the Court. See United States v. Reid, 1851, 12 How. 361, 53 U.S. 361, 366, 13 L.Ed. 1023. Furthermore, it is doubtful that the

articles are prejudicial in character. Except for the portions heretofore discussed, the articles consisted mainly of a factual report of the trial. In any event, these articles were not prejudicial in effect.

Defendant argues, however, that the mere fact that two jurors read the articles should have been sufficient to require the Court to grant defendant's motion to withdraw a juror. It would be virtually impossible to conduct jury trials if the mere opportunity for prejudice is to raise a presumption that it exists. See Holt v. United States, 1910, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021. Further, as stated by Judge Augustus N. Hand, in United States v. Keegan, 2 Cir., 1944, 141 F.2d 248 at page 258, reversed on other grounds, 1945, 325 U.S. 478, 65 S.Ct. 1203, 89 L.Ed. 1745: "Jurors cannot be treated as unable to withstand any effect of newspaper publications. Indeed such a ruling would make it practically impossible to conduct trials in metropolitan centers and would treat the average sceptical juror as a helpless person." However, to avoid any possible prejudice to the defendant and to determine whether any had resulted, we followed a precautionary procedure similar to that approved in other cases. Reining v. United States, 5 Cir., 1948, 167 F.2d 362; United States v. Carruthers, supra.

## II.

■ The income tax returns upon which the several counts were based were offered in evidence by the Government, and attached to each return was a sheet titled "Report of Income Tax Audit Changes". These sheets were either Treasury Form 885 or 885A and had been used by agents of the Bureau of Internal Revenue to recompute the tax owed by each of the taxpayers involved. It is urged by the defendant that the Court erred in refusing to admit the various Forms 885 and 885A. These forms were the subject of considerable controversy during the course of the trial. Originally, the Government offered them in evidence as part of the official record and defendant objected to their admissibility. The Court reserved its rul-

ing on their admissibility. Before resting its case, the Government withdrew its offer of all the 885 and 885A forms except one which had been admitted by the Court when defendant's counsel used it in connection with his cross-examination of the taxpayer to whom it related. Subsequently, defendant's counsel reversed his position, and offered in evidence the remaining forms 885 and 885A. At this time, the Government objected to their introduction in evidence and the Court sustained the objection. At the trial, defendant's counsel stated that he was offering the forms to show that even Government agents make mistakes in computing taxes due since the audit sheets on their face appeared inconsistent in some respects with the testimony of the respective taxpayers and to show further that other agents allowed some of the deductions which the indictment charged were false and fraudulent. Defendant now argues additionally that these forms should have been admitted as bearing upon the criminal intent of the defendant and upon the credibility of certain witnesses.

■ Much of the contention concerning these forms results from a failure to understand their nature, content and use. They are work sheets for use within the Bureau and their purpose is to show the additional amount of tax assessed but not necessarily the manner by which the amount of additional assessment is computed. Consequently, the audit sheets often do not show which deductions are disallowed but indicate only the total amount of allowable deductions. In addition, when it appears to the auditing agent that the taxpayers had proper deductions which were not shown on their returns, these may be balanced against the improper deductions without being shown on the audit forms with the result that improper deductions may seem to have been allowed or proper deductions disallowed. Proper deductions may be disregarded in order to apply the standard deduction when this is advantageous to the taxpayer. It is evident, therefore, that these forms would have been misleading and confusing to the jury.

This alone was reason enough for denying their admission. Disregarding this basis for excluding the forms, in our opinion they should not have been received in evidence for any of the purposes urged by defendant's counsel. At the time of the trial and in his oral argument, defendant's counsel urged that the forms should have been admitted to show that Government agents made mistakes. Assuming that the forms did show this, we see no relevancy or materiality in such proof. The issue was whether the defendant had prepared false and fraudulent returns, knowing them to be false. The mistakes, if any, of Internal Revenue agents had nothing to do with this issue. Nor do we see in what respect the forms had any bearing on the intent of the defendant as urged by his counsel. The defendant argued also that the forms should have been admitted to attack the credibility of the several taxpayers who appeared as witnesses against the defendant. Again, we fail to see how these forms could be said to affect the credibility of any of the taxpayers. Assuming, however, that the forms might have been admitted for that purpose, the Court was warranted in refusing to admit them because the defendant had laid no basis for attacking the credibility of any of the taxpayer-witnesses. It has long been the rule that a condition precedent to a direct contradiction of a witness by statements he has made on previous occasions is the laying of a proper foundation on cross-examination, namely, by calling the witness' attention to the prior inconsistent statement and by giving him an opportunity to explain it if he so desires. The Charles Morgan, 1885, 115 U.S. 69, 5 S.Ct. 1172, 29 L.Ed. 316; U.S. v. Angelo, 3 Cir., 1946 153 F.2d 247; Adamos v. New York Life Ins. Co., D.C.W.D.Pa., 1937, 22 F.Supp. 162, affirmed 3 Cir., 1938, 94 F.2d 943.

### III.

The third reason asserted by the defendant for a new trial has no merit. Defendant argues that where it appeared that one spouse signed the joint return for both and where the defendant signed individual returns for the taxpayer without express authority, no valid return was filed and that the Court should have granted the defendant's motion for judgment of acquittal on those counts. In addition, the defendant argues in his brief that the Court failed to instruct the jury properly on the requisites of a valid return. In this connection it may be noted that the defendant did not submit any points for instruction although given an opportunity to do so and, further, did not specifically object to the portion of the charge relating to the validity of the returns as required by Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C. In any event, defendant's objection is not well founded. The returns were in the custody of the Collector of Internal Revenue and were treated by the Government and the taxpayers as the returns of the taxpayers involved. Furthermore there was evidence, as to most of the returns, that oral authority to sign was given. In many instances, a husband signed for himself and his wife, or a wife signed for herself and her husband. In the other cases where the taxpayer did not sign himself, there was evidence that the defendant signed for the taxpayer. Whether prior specific authority was shown, however, is unimportant in view of the fact that there was evidence that the taxpayers treated the returns as their returns, and there was no evidence that they ever intended otherwise. Certainly, there was sufficient evidence of ratification of authority to sign if not sufficient evidence of prior authority to do so.

The defendant's motion for a new trial is without merit and will be denied.