## BENNETT v. CITY OF LONGVIEW et al. (No. 2998.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 17, 1925. Rehearing Denied Jan. 22, 1925.)

1. Municipal corporations ⬅⇒126—Office subject to abolition.

Every city office, created by its charter, is subject to abolition through right of people to change or amend organic law.

2. Officers ⬅⇒4—Public office expires with law creating it.

Every public office, being created by some law, expires ipso facto with abrogation of that law, unless perpetuated by some other provision.

3. Municipal corporations ⬅⇒48(2)—New charter held to abrogate office of city secretary.

Longview City Charter, April, 1923, being complete reorganization of city government, and recreating city offices, held to abrogate by implication office of city secretary.

4. Municipal corporations ⬅⇒48(2)—Office of city secretary, under new charter, not continuation under old, though with same duties.

Office of city secretary, under charter of city of Longview of April, 1923, held not continuation under old charter, though duties were not changed; office being agency which was re-

voked when authority on which it existed was abrogated.

**5. Municipal corporations ⬛⟞48(2)—Perpetuation of office of city secretary not implied under new charter.**

Longview City Charter, April, 1923, § 57, providing that property, rights, or claims of any nature are not to be destroyed by charter, *held* not intended to imply perpetuation of office of city secretary under old charter; secretary having legal right only so long as office existed.

Appeal from District Court, Gregg County; P. O. Beard, Judge.

Proceeding by H. C. Bennett against the City of Longview and others. Judgment for defendants, and plaintiff appeals. Affirmed.

W. C. Shoults, of Longview, and Johnson, Edwards & Hughes, of Tyler, for appellant.

E. M. Bramlette, of Longview, and Prendergast & Prendergast, of Marshall, for appellees.

HODGES, J. In March, 1922, the appellant, Bennett, was legally appointed city secretary by the mayor of the city of Longview, Tex. His term began about the 1st of the following April, and under the then existing charter was to continue two years. His salary was fixed by ordinance at $200 per month. At that time the city of Longview was operating under a special charter granted by the Thirty-Second Legislature. See Loc. & Sp. Acts of the Thirty-Second Legislature, c. 1, as amended by Loc. & Sp. Laws (1st Called Sess.) c. 11. It contained the following provisions:

"The * * * officers of said city shall be a city marshal, city attorney, city secretary, tax assessor and collector, city treasurer, and such other officers and employees as the city council may determine: Provided, that the offices of city secretary, tax assessor and collector, and city treasurer as heretofore combined by the city council, under the name of city secretary continue as heretofore, and the said city secretary have and possess all the powers and exercise all the duties conferred upon said officers by the charter of the city of Longview and city council of the said city, until otherwise ordered by the city council. * * * All officers of the city except mayor and aldermen, shall be appointed by the city council, and unless otherwise herein specified shall serve for such periods of time as the council may designate. The offices of city secretary, city marshal and city attorney shall be filled by appointment of the city council at the regular meeting thereof in December, or as soon thereafter as practicable, immediately prior to the election of mayor in April, and shall serve for two years or until the appointment and qualification of their successors."

Appellant had qualified as required by that charter, and in due time entered upon the performance of his official duties. In February, 1923, an election was held in the city of Longview, under what is called the Home Rule Amendment, and an entirely new charter was adopted which provided a "commission manager" form of government. The new charter became effective in April, 1923. The new city government was organized on the 9th of that month, and a temporary city manager was appointed. The city officials treated the adoption of the new charter as terminating all offices theretofore existing under the old charter, and at the first meeting of the commission the city manager presented for appointment to the office of secretary the name of Witt Nelson, who was promptly confirmed. Nelson thereupon qualified as required by the charter, and entered upon the performance of his duties as city secretary at a salary of $125 per month. The appellant was also an applicant for appointment under the new government, and, upon failing to secure it, accepted temporary employment by the city in collecting and arranging data for an audit of the city books. He was paid his regular salary up till May 1, 1923. In September following he filed this suit against the city to recover the salary he would have received after his removal, and also sought a restoration to the office of city secretary.

The court submitted only two issues to the jury: (1) Did the appellant abandon the office of city secretary upon the adoption of the new charter? This the jury answered in the negative. (2) Did he have information, at the time he presented his petition for appointment to the office of city secretary under the new government, that the salary would be $125 per month? This was answered in the affirmative. From a judgment refusing the relief sought, the appellant prosecutes this appeal.

[1] The question before us is, Was the appellant legally ousted from the office of city secretary? It is well settled that the people of a city have the legal right, by amending their charter, or by adopting a new one, to abolish existing offices, and thus end before their expiration the terms for which official incumbents had been elected or appointed. The charter of a city is its organic law, and every officeholder takes his office subject to the exercise of the right of the people under our present Constitution to change their form of government. Election or appointment to an office is not a contract creating a vested right which cannot be disturbed, within the meaning of the state and federal Constitutions. Jones v. Shaw, 15 Tex. 577; Mial v. Ellington, 134 N. C. 149, 46 S. E. 967, 65 L. R. A. 697; Throop on Pub. Officers, §§ 19 and 315.

Counsel for appellant contend that while the people of the city of Longview had the right to abolish the office of city secretary, such was not the legal result of the adoption of the new charter in this instance. That argument is apparently based on the

fact that the new charter provides for the office of city secretary, and does not in terms abolish the former office.

[2, 3] Every public office is the creation of some law, and continues only so long as the law to which it owes its existence remains in force. It logically follows that, when that law is authoritatively abrogated, the office, ipso facto, ceases, unless perpetuated by virtue of some other legal provision. Throop on Pub. Officers, § 315. There were no constitutional or legal restrictions on the right of the citizens of Longview to abolish all of the former offices and to establish an entire new system. Hence there was no implied perpetuation of the former offices resulting from any limitation, or qualification, of the right to change the form of city government. While the new charter does not expressly abrogate the former offices, it does so by necessary implication. The new charter was not an amendment to the old charter, but one complete within itself. It created new offices, designated by different names, to be filed in different ways, to be held for different terms and upon different conditions. It has all the features of a complete reorganization of the city government.

A new office, city manager, was created, and the incumbent of that office was authorized to assume the direction of the administrative branch of the government and to appoint all the subordinate officials. The terms of all offices were determinable at the will of the commission, or that of the city manager. Section 12 of the new charter provides that the city manager shall be the chief executive officer of the city, and shall be chosen by the commission for an indefinite period, subject to removal at the will of the commission. Section 13 makes the manager responsible to the commission for the proper administration of all affairs of the city, and to that end he was authorized to make all appointments to the directorships of the ciy departments, and, under such regulations as might thereafter be provided, make all appointments to minor positions in the city service, on recommendations of the directors of the various departments, subject to the approval of the commission. Section 15 provides for different departments of the city government, such as law, public works, and utilities, public health, public safety, and welfare, accounting, and such others as the commission might thereafter create. The city commission was given the power to abolish all offices, except those of

city manager and city secretary. Section 19 provided for the creation of the office of city secretary, and prescribed the duties. It fixed no tenure of office, and provided that he should receive a salary of not less than $125 per month, nor more than $200 per month. Section 20 made the city secretary director of accounting. Under section 45 the city manager was authorized to appoint and remove all directors of all the departments, and all subordinate officers and employés in those departments, subject to the approval of a majority of the commissioners.

[4] A city charter is to the city government what the Constitution is to a state. The adoption of this charter, so complete within itself, was the beginning of a new governmental epoch. Unless it provided otherwise, its organization fixed the date from which the terms of all the offices which it created commenced. The fact that the new charter created offices designated by the same name and charged with the same duties as those provided for in the old charter is of no importance. The old offices owed their existence to the old charter, and, when the old charter was abrogated, its creatures lost their legal authority to further act as agents, or representatives, of the city. In the absence of some assault upon the legality or regularity of the proceedings culminating in the adoption of the new charter, we must assume that these were conducted in conformity with the Constitution and laws of the state.

[5] Appellant contends that the perpetuation of the office of city secretary is implied in the provisions of section 57 of the new charter, which is as follows:

"The adoption of this charter shall never be construed to destroy any property, action, rights of action, legal claims and demands of any nature or kind whatsoever vested in the city at this time; and all such rights of action, claims, or demands shall vest in and inure to the city, and to any person asserting any such legal claims against the city, as fully and completely as though this charter had not been adopted."

That section was not designed to protect claims of this character. The appellant had a legal demand for his official salary only so long as he remained in office and performed its incidental duties. When the office ceased to exist, his employment ended, and there was no basis for a further claim for compensation.

The judgment will be affirmed.