**THE CITY OF ALAMO and its Employees, Agents and all Those Acting in Concert with them or at their direction, Appellants,**

v.

**Ponciano GARCIA, Appellee.**

**No. 13–97–340–CV.**

Court of Appeals of Texas, Corpus Christi.

Nov. 25, 1997.

Rehearing Overruled Dec. 18, 1997.

Neil E. Norquest, Chris A. Brisack, Norquest & Brisack, James E. Darling, Kevin D. Pagan, McAllen, for appellants.

Aaron Pena, Jr., Edinburg, Keith C. Livesay, McAllen, for appellee.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr. and CHAVEZ, JJ.

## OPINION

SEERDEN, Justice.

The City of Alamo, appellant, appeals the trial court's decision to issue a temporary injunction prohibiting it from swearing-in a newly elected commissioner. We reverse the trial court's decision and order that the injunction be dissolved.

■ The City of Alamo is a home rule city governed by its city charter. A home rule city looks to the legislature only to ascertain whether the legislature has limited the city's constitutional power. *Garza v. Garcia*, 785 S.W.2d 421, 422 (Tex.App.—Corpus Christi 1990, writ denied). "A grant of power of removal from office is strictly construed and whatever is not given in unequivocal terms is withheld and not implied." *Id.* This Court can take judicial notice of the city charter, which is in the record. *See Id.* Article II, section 6 of the Alamo City Charter provides, in relevant part:

A mayor or Commissioner shall forfeit his office if the Mayor or Commissioner:

(4) fails to attend four (4) consecutive regular meetings of the Board of Commissioners unless he is excused by unanimous vote of the Board of Commissioners, the vote to be taken at the end of the fourth meeting; or

(5) fails to attend eight (8) regular meetings of the Board of Commissioners in any anniversary year of such person, unless he is excused by unanimous vote of the Board of Commissioners, the vote to be taken at the end of the eighth meeting . . .

The City of Alamo alleges Place 4 Commissioner Ponciano Garcia missed four consecutive meetings of the Board, and missed eight Board meetings in one anniversary year. Thus, pursuant to the charter, Garcia's seat was automatically forfeited. On January 7, 1997, the Board of Commissioners (the Board) took a vote on whether Garcia's absences would be excused. The Board voted not to excuse Garcia.

On January 21, 1997, after allowing Garcia an opportunity to explain his absences, a majority of the Board members, once again,

voted not to excuse Garcia's absences. An election was thereafter called for Place 4, i.e., former Commissioner Garcia's seat.

On April 11, 1997, Garcia filed an original petition claiming that he had not forfeited his city commission seat, and seeking to enjoin the election of any individual to that seat. Without notice to appellant, a restraining order enjoining the election was entered on April 14, 1997. This order, under protest of appellant, was subsequently withdrawn. *See City of McAllen v. Garza,* 869 S.W.2d 558, 560 (Tex.App.—Corpus Christi 1993, writ denied)(Texas law does not allow enjoining elections).

Garcia submitted himself as a candidate for the vacated seat on the city commission. On May 3, 1997, Marcelinos Medina defeated former Commissioner Garcia in the election for Place 4. On May 6, 1997, Garcia filed his first amended petition requesting declaratory and injunctive relief relating to his forfeiture and the seating of Medina as commissioner. The trial court, without notice to appellant or a hearing, granted Garcia's request for a temporary restraining order thereby prohibiting appellant from swearing-in the newly elected commissioner. At that time, the trial court set a hearing on Garcia's motion for a temporary injunction.

On May 30, 1997, after the hearing on Garcia's motion, the trial court, finding the actions of the Alamo City Commissioners unreasonable, orally granted a temporary injunction enjoining appellant from seating anyone in Place 4. A written order was signed by the trial court on June 17, 1997, which added, as further grounds for the injunction, that the self-enacting forfeiture provision violated the due process requirements of, presumably, the Texas and/or United States Constitutions. The trial court also found the City's charter to be in conflict with the Texas Open Meetings Act.

Appellant's request for emergency and mandamus relief was denied by this Court. Appellant, pursuant to TEX. CIV. PRAC. REM. CODE ANN. § 51.014(4) (Vernon 1997), brings this interlocutory appeal of an order granting a temporary injunction.

In its first point of error, appellant complains that the trial court lacked the authority to interfere, via injunctive relief, with the self-enacting forfeiture provision contained within the Alamo City Charter. Specifically, appellant argues that although Garcia was entitled to judicial review of the Board's decision not to excuse his absences, injunctive relief was not available.

Texas courts, in recognition of the autonomy and separate powers of municipal legislatures, "will not interfere to protect a person from removal from office by a man or body of men to whom the power to remove is given by law." *Huntress v. McGrath,* 946 S.W.2d 480, 484–85 (Tex.App.—Fort Worth 1997, n.w.h.)(quoting *Callaghan v. Tobin,* 40 Tex.Civ.App. 441, 90 S.W. 328, 330 (1905, writ ref'd)). The courts will, however, be able to review a city council's (or commission's) actions for abuse of discretion and due process. *Garza,* 785 S.W.2d at 422.

The co-existence of these two rules was best summed up by the San Antonio Court of Appeals in *White v. Bolner,* 223 S.W.2d 686 (Tex.Civ.App.—San Antonio 1949, writ ref'd). In *White,* Bolner and others sued White as the mayor of the city of San Antonio. Bolner and others prayed for, and were granted, a temporary injunction "restraining A.C. White as Mayor of City of San Antonio, from taking any other further action to oust plaintiffs ... as commissioners of San Antonio Housing Authority, and also enjoining [the replacement commissioners] from acting as commissioners of the San Antonio Housing Authority." *Id.* at 687. In reversing and setting aside the injunction, the court stated that although Bolner and others were entitled to judicial review, "the right to a review by a judicial body does not entitle appellees to a temporary injunction, the effect of which is to perpetuate them in office pending that review." *Id.* at 688. In conclusion, the court stated that the mayor,

... [h]aving jurisdiction and having made an order ousting appellees, this order must be presumed to be correct and must be given effect until the contrary is shown. While appellees have a right to a judicial review of this matter, they do not have the right to have this action by the mayor

suspended and rendered inoperative pending their judicial review of the matter. *Id.* at 688–89. *See also Riggins v. City of Waco,* 100 Tex. 32, 93 S.W. 426 (1906)(Texas Supreme Court concluded that it could not interfere with or disregard the action of the city council in removing the mayor from office other than inquiring into whether the council exceeded its lawful authority in the attempted removal so that its action may be considered a nullity); *Huntress,* 946 S.W.2d at 486 (court, in granting mandamus relief, held the trial court abused its discretion in enjoining hearings conducted by city aldermen for removal of mayor); *Cosmo Life Insurance Co. v. State Board of Insurance,* 319 S.W.2d 162, 165 (Tex.Civ.App.—Austin 1958, no writ)(citing *White v. Bolner* in support of its holding that Cosmo was entitled to judicial review of Board's order regulating issuance of policies but that "such review does not entitle them to a temporary injunction the effect of which is to perpetuate regulations, and rates . . .").

As appellant points out, the Board in the case at hand acted within their authority as provided under the city charter. Therefore, appellant argues, based on the caselaw cited above, Garcia was not entitled to injunctive relief.

We do not question the authorities cited by appellant nor the proposition that the actions of the Board, when acting pursuant to its lawful authority, are not subject to injunctive relief. However, in the cases cited by appellant, the actors were acting pursuant to "lawful authority." That is, the provisions acted upon, whether they be city ordinances or other statutory authority, were either not challenged or were found "lawful."

For example, in *White v. Bolner,* 223 S.W.2d at 688–89 (discussed above), the San Antonio Court of Appeals first overruled appellees' contention that the statutory authority upon which Mayor White relied upon in ousting appellees was unconstitutional and void because it failed to provide for judicial review. Only then did the court examine the mayor's compliance with the statute and hold that appellees, while entitled to judicial review, were not entitled to injunctive relief. It appears from the language of the opinion

that if the statute was held unconstitutional as argued by appellees, the injunctive relief granted by the trial court would have been affirmed. *Cf. Garza,* 785 S.W.2d at 423 ("the judgment of a governing body having discretionary power would not be reversed unless the body's action was *illegal,* unreasonable, or arbitrary)(emphasis added)(citing *Lewis v. City of Fort Worth,* 126 Tex. 458, 89 S.W.2d 975 (1936)); *Huntress,* 946 S.W.2d at 485 ("the courts . . . may inquire whether or not the council exceeded its *lawful authority* in the attempted removal . . .")(emphasis added) (quoting *Riggins v. City of Waco,* 100 Tex. 32, 93 S.W. 426, 427 (1906)); *Industrial Accident Board v. O'Dowd,* 298 S.W.2d 657, 658–59 (Tex.Civ.App.—Austin)(affirming temporary injunction preventing Board from barring plaintiffs from practicing before Board based on unconstitutionality of statute pursuant to which Board acted), *rev'd,* 157 Tex. 432, 303 S.W.2d 763 (1957)(reversed and dissolved temporary injunction finding statute pursuant to which Board acted to be constitutional); *City of Fort Worth v. McDonald,* 293 S.W.2d 256, 259 (Tex.Civ.App.—Fort Worth 1956, writ ref'd n.r.e.)(enforcement of unconstitutional city ordinance properly enjoined).

Therefore, it appears to us as though injunctive relief is available where the Board acts pursuant to "unlawful" authority. In this regard, the trial court, upon finding the city charter violative of due process considerations and the Open Meetings Act, could have properly enjoined appellant.

Appellant, however, in his second point of error and his reply brief, argues that the automatic forfeiture provision of the city charter does not violate due process or the Open Meetings Act. We agree.

### DUE PROCESS

The United States Constitution provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . ." U.S. Const. Amend. XIV, § 1. The due process provision of the Texas Constitution states: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of

the law of the land." TEX. CONST. art. I, § 19. Despite the textual differences between the two provisions, the Texas Supreme Court has concluded there is no meaningful distinction between the provisions. *University of Texas Medical School at Houston v. Than*, 901 S.W.2d 926, 929 (Tex.1995). Therefore, we consider federal due process claims and State due course claims together using contemporary federal due process interpretations. *Id.*

When analyzing due process, we apply a two-part test: (1) we must determine whether appellee had a liberty or property interest entitled to procedural due process; and (2) if so, we must determine what process is due. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153–54, 71 L.Ed.2d 265 (1982); *Than*, 901 S.W.2d at 929. Assuming arguendo Garcia had a sufficient liberty or property interest in his position as city commissioner, we find the required process was provided.

▪ Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Than*, 901 S.W.2d at 930 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 901–02, 47 L.Ed.2d 18 (1976)). What process is due is a "flexible" concept depending on the facts and circumstances of the particular case. *Mathews*, 424 U.S. at 334, 96 S.Ct. at 902; *Than*, 901 S.W.2d at 930. In general, there is no rule that a "pre-deprivation" hearing is required in every case. *Chaney v. Suburban Bus. Div. Of Regional Transportation Authority*, 52 F.3d 623, 628 (7th Cir. 1995). Rather, the process required is measured by the balancing of three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335, 96 S.Ct. at 902–03

It is undisputed that Garcia received no notification that his office was to be vacated other than his presumed knowledge of his own absences from the board meetings and of the requirements of the city charter. There was no hearing conducted prior to his automatic forfeiture. There is nothing in the city charter, however, which expressly forecloses the opportunity to be heard regarding the facts upon which his seat was forfeited. The presumption of the constitutionality of every statute or ordinance is accompanied by a presumption that it was drafted with constitutional requisites in mind. TEX. GOV'T CODE ANN. § 311.021 (Vernon 1988); *Texas Employment Com'n v. Remington York, Inc.*, 948 S.W.2d 352, 357 (Tex.App.—Dallas 1997, n.w.h.). Presumably, the City of Alamo, in drafting its charter, intended that Garcia be afforded an opportunity to be heard, albeit after his seat was declared vacant. *House of Tobacco, Inc. v. Calvert*, 394 S.W.2d 654, 658 (Tex.1965)(although statute does not provide for notice and a hearing, such is not unconstitutional since these provisions may be by implication incorporated into the statute unless the statute expressly provides otherwise) (citations omitted); *Limon v. State*, 947 S.W.2d 620, 626–27 (Tex.App.—Austin 1997, no pet. h.)("[T]he fact that a statute does not expressly provide for notice and hearing does not render it unconstitutional.") This is further evidenced by the fact that Garcia was, upon request, given an opportunity to explain his absences to the Board on January 21, 1997. The only question remaining is whether this post-deprivation hearing was sufficient to comply with due process.

▪ Applying the three *Mathews* factors, we conclude that a post-deprivation hearing was sufficient to protect Garcia's due process rights. Although Garcia, being subject to an automatic forfeiture provision, loses the right to challenge the applicability of the provision prior to forfeiture, such an interest pales in comparison to other interests. For example, when a board member effectively abandons the duties of his office, the need for the establishment of the vacancy becomes urgent. The citizens of the city were not being represented as they were entitled to be, with a full Board of Commissioners. Additionally, the issue of the application of the charter

provision in question is one of simple resolution. Determining whether a commissioner misses four consecutive meetings, or eight meetings in a given year, is not likely to be subject to factual dispute. Accordingly, we conclude that Garcia was afforded due process.

## OPEN MEETINGS ACT

As part of the basis in awarding injunctive relief, the trial court found that the charter provisions in question "were incapable of being satisfied and simultaneously comply with the Open Meetings Act...." We disagree.

■ The Open Meetings Act was enacted in 1967 to assure that the public has the opportunity to be informed about the transactions of public business. *City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 765 (Tex.1991); *Acker v. Texas Water Com'n*, 790 S.W.2d 299, 300 (Tex.1990) (quoting Acts 1967, ch.271, § 7, 1967 Tex. Gen. Laws 597, 598). The act provides:

A governmental body shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body.

TEX. GOV'T CODE ANN. § 551.041 (Vernon 1994). A "meeting" includes "a deliberation ... during which public business or public policy over which the governmental body has supervision or control is discussed or considered or during which the governmental body takes formal action." TEX. GOV'T CODE ANN. § 551.001(4) (Vernon 1994). From this definition and from an examination of the caselaw applying the Open Meetings Act, it is clear that the governmental body must *act, discuss,* or *do* in order for the notice provision of the Open Meetings Act to apply. *See Acker*, 790 S.W.2d at 300 (purpose of Act is to assure that public has the "opportunity to be informed concerning the transactions of public business."); *Markowski v. City of Marlin*, 940 S.W.2d 720, 725 (Tex.App.— Waco 1997, no writ)(notice sufficient under

act if it would alert reader to fact that some *action* would be taken on certain topic); *Rettberg v. Texas Dept. Of Health*, 873 S.W.2d 408, 411, 413 (Tex.App.—Austin 1994, no writ)(issue is whether notice of governmental meeting was "sufficiently specific to alert the interested public that some *discussion* and *action* could occur ..."); *Point Isabel Indep. Sch. Dist. v. Hinojosa*, 797 S.W.2d 176, 180 (Tex.App.—Corpus Christi 1990, writ denied)(more important the governmental *action*, the more specific the notice must be).

■ The city charter provision in question, however, does not require action on the part of the Board. Rather, the charter provision which disqualified Garcia from holding his position was self-enacting.[1] Upon the occurrence of his fourth consecutive and eighth absence, his disqualification from office was automatic without the need for further action by the remainder of the commission. The Board did not terminate Garcia's position; Garcia forfeited his position. Therefore, the provisions of the Open Meetings Act are inapplicable.

■ The provisions of the Open Meetings Act were, however, applicable to the subsequent hearing (see discussion on due process) at which Garcia defended his absences, and the remainder of the Board voted on whether to excuse Garcia's absences. There is no argument by either party that the requirements of the Open Meetings Act were not met in relation to that hearing, nor would such affect our holding that the city charter provisions in question are not inherently inconsistent with the notice provisions of the Open Meetings Act.

## CONCLUSION

Accordingly, because due process considerations are not violated, and because the city charter does not conflict with the Open Meetings Act, we find the city charter to be "lawful" authority. Therefore, because it is

---

1. Under such an automatic forfeiture provision, only the occurrence of the disqualifying event itself, not the reasons therefore, are relevant to whether the provision applies. *See Harrison v. Chesshir*, 316 S.W.2d 909, 914 (Tex.Civ.App.— Amarillo 1958), *rev'd on other grounds*, 159 Tex.

359, 320 S.W.2d 814 (1959); *Prince v. Inman*, 280 S.W.2d 779, 781 (Tex.Civ.App.—Beaumont 1955, no writ)(only fact susceptible to judicial review was determined to be whether disqualifying event occurred).

uncontested that the Board acted within the confines of the charter provisions, injunctive relief is not available. (See above).

We sustain appellant's first and second points of error, reverse the judgment of the trial court, and render judgment that the order of injunction be dissolved. All other points need not be discussed. TEX.R.APP. P. 47.1.