**Larry LIPSCOMB, Patricia Moore, Robert Peffer, Ted Reeves, William Carr, and Roy Marshall, Appellants,**

v.

**Rick RANDALL, Appellee.**

No. 2–98–084–CV

Court of Appeals of Texas, Fort Worth.

Jan. 7, 1999.

Rehearing Overruled March 18, 1999.

Taylor, Olson, Adkins, Sralla & Elam, L.L.P., E. Allen Taylor, Jr., Tim G.Sralla, Debra Drayovitch, Fort Worth, Griffin, Whitten & Jones, Mike Griffin, Denton, for appellants.

William Trantham, Farmers Branch, for appellee.

## OPINION

CAYCE, Chief Justice.

The council members of The Town of Flower Mound, Texas, appeal the district court's writ of mandamus[1] reinstating a council member, Rick Randall, who automatically forfeited his office under the town charter when he was convicted of crimes of moral turpitude in municipal court. We reverse and render judgment vacating the trial court's judgment.

## BACKGROUND

The Town of Flower Mound is a home-rule city governed by its town charter. Section 3.02 of Flower Mound's Home Rule Charter provides that "a Councilperson shall forfeit his office if he ... is convicted of a crime involving moral turpitude." Section 3.03 of the charter further provides that the town council shall "be judge of the election and qualifications of its own members, and other elected officials of the Town."

On September 27, 1997, Randall, a member of the town council, was arrested for assaulting his wife. Consequently, two Class C misdemeanor complaints, one for assault by contact and the other for assault by threat,[2] were filed against Randall in Flower Mound Municipal Court.

The regular municipal judge, Ann Anderson, recused herself from hearing Randall's cases. Section 4.04.3 of the town charter provides that "[i]n case of the disabil-

---

1. An action for a writ of mandamus initiated in the trial court is a civil action subject to appeal as any other civil suit. *See Anderson v. City of Seven Points,* 806 S.W.2d 791, 792 n. 1 (Tex. 1991); *University of Tex. Law Sch. v. Texas Legal Found.,* 958 S.W.2d 479, 481 (Tex.App.—Austin 1997, no writ).

2. *See* Tex. Pen.Code Ann. § 22.01(a)(2)-(3), (c) (Vernon 1994).

ity or absence of the Judge of the Municipal Court, the Council shall appoint a qualified person ... to act in his place." Because of Judge Anderson's recusal, the town council appointed Marion Mosely as a special visiting municipal court judge to preside over Randall's assault cases.

On December 22, 1997, Randall's cases were tried in municipal court to a jury. The jury found Randall guilty of assaulting his wife in both cases and Judge Mosely entered judgments of conviction.[3] Randall then appealed the convictions to Denton County Criminal Court No. One.[4] On July 23, 1998, in a trial de novo, he was again convicted by a jury of both crimes.

The minutes of the January 5, 1998 town council meeting reflect that upon observing that Randall had been convicted in municipal court of two crimes involving moral turpitude, the council found that Randall had forfeited his office. In accordance with the charter's requirements, the council then appointed Roy Marshall "to fill the vacancy created by Mr. Randall's conviction."

Randall sought a writ of mandamus from the 362nd District Court ordering the town council to allow Randall to continue to vote and perform all of the functions of a council member. Randall also sought injunctive relief enjoining Marshall from participating in the council's business in Randall's place. The 362nd District Court granted mandamus relief, ordering that Randall "be counted among the quorum of council members present at any council meeting he shall attend and be allowed to vote on all resolutions, ordinances or business of the Town Council, and to have such vote by ayes and nays counted in the official voting record...." The members of the town council, appearing individually,[5] appeal from this writ of mandamus.

## ISSUES ON APPEAL

The town council asserts that the charter provision at issue authorizes automatic forfeiture of office upon conviction of a crime involving moral turpitude, and that the trial court's writ of mandamus erroneously interferes with the home-rule city's authority to provide for removal of its public officers. In response, Randall asserts three grounds in support of the writ permitting him to remain on the town council: (1) the municipal court convictions are void because the appointment by the council of the temporary municipal judge was in violation of the town's charter requirements; (2) the municipal court convictions do not support automatic forfeiture of office because Randall was entitled to a trial de novo in county court; and (3) Randall's office is not forfeited unless and until his convictions become final and unappealable. During oral argument, Randall also challenged his removal from office on the ground that his convictions were not for crimes involving moral turpitude.

## DISCUSSION

### *Standard of Review*

■ Texas has long adhered to the rule that courts of equity will not interfere to prevent removal of a person from office if the power of removal is given by law. *See City of Alamo v. Garcia*, 960 S.W.2d 221, 223 (Tex.App.—Corpus Christi 1997, no writ); *Huntress v. McGrath*, 946 S.W.2d 480, 484–85 (Tex.App.—Fort Worth 1997, orig. proceeding); *Crouch v. Stanley*, 348 S.W.2d 543, 545 (Tex.Civ.App.—Fort Worth 1961, no writ); *Miles v. Logan*, 265 S.W. 421, 424 (Tex.Civ.App.—Beaumont 1924, no writ); *Callaghan v. Tobin*, 40 Tex.Civ.App. 441, 90

---

3. The judgments of conviction are on preprinted forms with several fill-in-the-blank sections. Judge Mosely completed the section indicating that the court received the pleas and found Randall guilty, even though it was undisputed that Randall was tried and convicted by a jury.

4. We note that the county criminal court may not have had jurisdiction over the appeal of Randall's convictions. *See* Tex. Gov't Code Ann. §§ 25.0634(c), 25.0633(b) (Vernon Supp.1999)

("A [Denton] county criminal court has no jurisdiction over Class C misdemeanor appeal cases."). Because this potential jurisdictional error is not raised by the town council and does not affect this court's disposition of those points that have been raised, we will not address it here.

5. The council members are referred to collectively as "the town council."

S.W. 328, 330 (1905, writ ref'd); *Riggins v. Thompson*, 30 Tex.Civ.App. 242, 70 S.W. 578, 578 (1902, writ ref'd). When a home-rule charter vests power in a town council, the trial court has no right to substitute its judgment and discretion for the judgment and discretion of the council, and may only determine whether the council acted illegally, unreasonably, or arbitrarily. *See Barrington v. Cokinos*, 161 Tex. 136, 338 S.W.2d 133, 142 (1960); *Riggins v. City of Waco*, 100 Tex. 32, 93 S.W. 426, 427 (1906); *see generally Davis v. City of Taylor*, 123 Tex. 39, 67 S.W.2d 1033, 1034 (1934); *Barnett v. City of Plainview*, 848 S.W.2d 334, 340 (Tex.App.—Amarillo 1993, no writ). This determination presents a question of law. *See City of San Antonio v. Wallace*, 161 Tex. 41, 338 S.W.2d 153, 157 (1960).

### Authority of Flower Mound as a Home–Rule City to Provide for Automatic Forfeiture of Office Upon Conviction

As a home-rule city, Flower Mound has the full power of local self-government:

> It was the purpose of the Home–Rule Amendment [to the Texas Constitution] ... to bestow upon accepting cities and towns of more than 5000 population full power of self-government, that is, full authority to do anything the legislature could theretofore have authorized them to do. The result is that now it is necessary to look to the acts of the legislature not for grants of power to such cities but only for limitations on their powers.

*Forwood v. City of Taylor*, 147 Tex. 161, 214 S.W.2d 282, 286 (Tex.1948) (citing Tex. Const. art. XI, § 5); *see also Dallas Merchant's & Concessionaire's Assoc. v. City of Dallas*, 852 S.W.2d 489, 490–91 (Tex.1993). The legislature has expressly authorized home-rule cities to "prescribe the qualifications, duties, and tenure of office for officers." Tex. Loc. Gov't Code Ann. § 26.041 (Vernon 1988); *City of San Benito v. Cervantes*, 595 S.W.2d 917, 918 (Tex.Civ.App.— Eastland 1980, writ ref'd n.r.e.). Beyond that authorization, the legislature has re-

mained silent on the issues of removal from or forfeiture of office in home-rule cities.[6] Thus, it is generally recognized that the authority for a home-rule city council to remove one of its members must be found in the city's charter. *See Garza v. Garcia*, 785 S.W.2d 421, 422 (Tex.App.—Corpus Christi 1990, writ denied); *City of San Benito*, 595 S.W.2d at 918; 22 Texas Practice, Municipal Law and Practice, § 99 (Supp.1998).

Flower Mound's charter provides that "[a] Councilperson shall forfeit his office if he ... [i]s convicted of a crime involving moral turpitude." It is undisputed that this provision is self-enacting. Thus, if applicable to Randall, the charter provision makes the forfeiture of office automatic upon conviction. *See City of Alamo v. Garcia*, 960 S.W.2d 221, 222 (Tex.App.—Corpus Christi 1997, no writ) (automatic forfeiture based on violation of absenteeism requirement); *Harrison v. Chesshir*, 316 S.W.2d 909, 914 (Tex.Civ. App.—Amarillo 1958) (automatic forfeiture when officeholder moved out of county), *rev'd on other grounds*, 159 Tex. 359, 320 S.W.2d 814 (1959).

### Randall was Convicted of Crimes Involving Moral Turpitude

■ Randall was convicted in municipal court of assault by contact and assault by threat, both of which are class C misdemeanors. *See* Tex. Pen.Code Ann. § 22.01(a)(2)-(3), (c). At oral argument, Randall's counsel opined that Randall's crimes were not serious enough to constitute crimes of moral turpitude. We disagree. "[M]isdemeanor assault, as defined by Penal Code § 22.01, by a man against a woman is a crime involving moral turpitude." *Hardeman v. State*, 868 S.W.2d 404, 405 (Tex.App.—Austin 1993), *dism'd*, 891 S.W.2d 960 (Tex.Crim.App.1995); *see also Ludwig v. State*, 969 S.W.2d 22, 30 (Tex.App.—Fort Worth 1998, pet. ref'd).

### The Visiting Municipal Court Judge was Appointed in Accordance with the Town Charter

Randall next argues that the municipal court convictions are void and, therefore, do

---

6. By contrast, the Texas Constitution and the Local Government Code provide for the removal of state and county officials. *See* Tex. Const. art. XV, § 7, & art. V, § 24 (Vernon 1993); Tex. Loc.

Gov't Code Ann. § 87.031 (Vernon 1988). *See also* Tex. Loc Gov't Code Ann. § 21.002 (Vernon 1988) (providing for the removal of general-law municipality officials).

not support automatic forfeiture of his office, because the town council allegedly violated its charter requirement when it appointed Judge Mosely to serve as a "special visiting municipal court judge." The Texas Government Code authorizes home-rule cities to appoint "alternate" or "temporary" municipal judges in accordance with the city's charter:

> The judge and *alternate* judges of the municipal court in a home-rule city are selected under the municipality's charter provisions relating to the election or appointment of judges. The judge shall be known as the "judge of the municipal court" unless the municipality by charter provides for another title.

TEX. GOV'T CODE ANN. § 29.004(a) (Vernon 1988) (emphasis added). Section 29.007 of the code specifically provides for the appointment of "temporary" judges:

> The municipality may provide by charter or by ordinance for the appointment of one or more *temporary* judges to serve if the regular judge, the presiding judge, or an associate judge is temporarily unable to act. A temporary judge must have the same qualifications as the judge he replaces and have the same powers and duties as that judge.

TEX. GOV'T CODE ANN. § 29.007(g) (emphasis added).

■■■ Randall first contends Judge Mosely's appointment was improper because it was not made by the mayor. Without addressing the question of whether Randall's arguments constitute an impermissible collateral attack on his criminal conviction,[7] we find that, contrary to Randall's assertion, the town charter expressly authorizes the *council*—not the mayor—to appoint temporary municipal court judges. The relevant charter provision governing the appointment of temporary municipal court judges provides as follows:

> Section 4.04.3 Absence of Judge

In the case of the disability or absence of the Judge of the Municipal Court, *the Council shall appoint a qualified person as provided in § 4.04.1 above to act in his place.* (emphasis added).

Section 4.04.1, which governs the appointment of the regular municipal court judge, states in pertinent part:

> The Judge of [the municipal] court shall be appointed by the Mayor with the concurrence of the Council and shall serve at the discretion of the Council. *He shall be an attorney licensed to practice in the State of Texas,* and shall receive such salary as may be fixed by the Council. (emphasis added).

A plain reading of these related charter provisions shows that, while the mayor may possess the authority to appoint the municipal court judge "with the concurrence of the Council," the charter expressly provides that "the *Council* shall appoint" qualified alternate or temporary municipal court judges to act in place of the regular judge. The charter further provides that the temporary judge shall be "a qualified person as provided in § 4.04.1"; that is, "an attorney licensed to practice in the State of Texas." Judge Mosely's qualifications, however, are not in dispute.

The only evidence in the record before us that indicates the manner in which Judge Mosely was appointed is an excerpt from the minutes of the October 20, 1997 town meeting. These minutes show that at the October 20 meeting, the town council considered a motion to appoint Judge Mosely as a temporary municipal court judge to hear Randall's criminal cases. Council members Carr, Moore, Reeves, and Peffer voted "aye." There were no "nays," and Randall abstained from voting. The minutes do not reflect whether the mayor participated in the vote. Nevertheless, the minutes do conclusively show that the majority of the council con-

---

**7.** Generally, a valid existing judgment cannot be collaterally attacked. A collateral attack, unlike a direct attack, does not attempt to secure the rendition of a single, correct judgment in the place of the former judgment. It is, instead, an attempt to avoid the effect of a judgment in a proceeding brought in a court of equal jurisdic-

tion for some other purpose and is available only when the judgment under attack is void. *See Employers Casualty Co. v. Block,* 744 S.W.2d 940, 943 (Tex.1988); *Browning v. Placke,* 698 S.W.2d 362, 363 (Tex.1985) (orig. proceeding); *Solomon, Lambert, Roth & Assocs. v. Kidd,* 904 S.W.2d 896,

curred in and authorized Judge Mosely's appointment, as the charter explicitly requires.

■ Randall also makes an unsupported assertion that Judge Mosely's appointment is invalid because "the post of 'special visiting municipal court judge' does not exist in Flower Mound." Randall concedes that the charter authorizes the appointment of an alternate or temporary judge. He suggests, however, that because the "post" of special visiting municipal court judge is not expressly mentioned in the charter, the position is not authorized. This argument has no merit. The specific title used by the council when it acted to appoint Judge Mosely has no bearing upon the validity of Judge Mosely's appointment as temporary municipal court judge. Judge Mosely was appointed to serve as "judge of the municipal court." *See* TEX. GOV'T CODE ANN. § 29.004(a). The fact that she may also have been referred to as a "special visiting" judge is of no importance.

Having determined that the town council followed the town charter's requirements in appointing Judge Mosely, we hold that Randall's municipal court convictions cannot be invalidated on the basis that Judge Mosely lacked authority to preside over Randall's municipal court trial.

### The Municipal Court Convictions Support Randall's Forfeiture of Office Notwithstanding His Right to a Trial De Novo in County Court

■ Randall argues that the municipal court convictions are of no force and effect because he was entitled to a trial de novo in county court.[8] Agreeing with Randall, the dissent suggests that, at the moment Randall filed his appeal in county court, the municipal court convictions vanished and thus could not serve as the basis for the automatic forfeiture of Randall's office, even though the convictions occurred in time prior to the appeal. *See dissenting op.* at 612. This argument would require us to both ignore the plain and unambiguous language of the city charter

and to give the trial de novo appeal concept a new expansive meaning that would lead to anomalous and illogical results.

■ Trial de novo "simply means that a person shall receive a new trial on the merits of the accusation." *Kutner v. Russell,* 658 S.W.2d 585, 588 (Tex.Crim.App.1983) (orig.proceeding) (op. on reh'g) (Teague, J., concurring); *see Ex parte Morales,* 53 S.W. 107, 108 (Tex.Crim.App.1899). The filing of a trial de novo appeal from a conviction suffered in municipal court deprives the municipal court judgment of finality, *see Deal v. State,* 423 S.W.2d 929, 931 (Tex.Crim.App. 1968), and annuls the determination of guilt in the municipal court proceeding so that there must be a new determination of guilt in the county court proceeding. *See id.; State v. Cortez,* 160 Tex. 532, 333 S.W.2d 839, 841 (1960).

■ However, this does not mean that the mere filing of the appeal from the municipal court judgment eradicates the conviction for all other purposes, as Randall and the dissent suggest. *See, e.g., Kutner,* 658 S.W.2d at 586; *Morales,* 53 S.W. at 108. To the contrary, the law continues to recognize a municipal court conviction as a legally significant event after it is appealed to county court. For example, the existence of a valid and enforceable municipal court judgment is an absolute prerequisite to confer appellate jurisdiction on a county court for the purpose of a trial de novo. *See State v. Campbell,* 820 S.W.2d 44, 46 (Tex.App.—Austin 1991, pet. ref'd). Moreover, to invoke the right to a trial de novo in county court, the defendant must file an appeal bond up to twice the amount of any fines and costs assessed in the municipal court and the bond must state the "defendant was convicted." TEX.CODE CRIM. PROC. ANN. art. 44.13(d). If the filing of an appeal bond rendered the conviction nonexistent for all purposes, as Randall and the dissent conclude, the statutory requirement of posting bond would be unnecessary, and the basis for the county court's appellate

---

900 (Tex.App.—Houston [1 st Dist.] 1995, no writ).

8. An appeal from a municipal court, not of record, to a county court results in a trial de novo. *See* TEX.CODE CRIM. PROC. ANN. art. 44.17 (Vernon

Supp.1999). The Flower Mound municipal court is not a municipal court of record. *See* TEX. GOV'T CODE ANN. §§ 30.001–.01464 (Vernon 1988 & Supp.1999). Therefore, Randall was entitled to and received a trial de novo on the two assault charges.

jurisdiction—a valid and subsisting municipal court judgment—would disappear.

Obviously, while a municipal court conviction may be "null and void" in the sense that it has no legal or binding force on a subsequent county court trial de novo, the conviction remains a historical event reflected in the public record that continues to have legal significance in other contexts for other purposes after it is appealed. Thus, even though Randall deprived the municipal court judgment of finality by invoking his right to a trial de novo in county court, his subsequent appeal and trial de novo did not erase the prior municipal court convictions that triggered the city charter's automatic forfeiture provisions before the appeal was filed.

Additionally, the analyses of both Randall and the dissent fail to take into account the plain and unambiguous language of the charter that requires automatic forfeiture of office when a councilperson is "convicted" without reference to whether the conviction is later suspended or annulled by a subsequent trial de novo appeal. As previously discussed, Flower Mound's forfeiture provision is self-enacting and automatic; forfeiture occurs instantaneously upon the happening of a single triggering event—conviction of a crime involving moral turpitude. *See City of Alamo,* 960 S.W.2d at 222 (violation of attendance requirement); *Harrison,* 316 S.W.2d at 914 (moving out of the county). Neither the express language of the charter nor decisional law interpreting similar forfeiture provisions allow a subsequent event (such as the filing of appeal or a trial de novo) to undo, or retroactively nullify, the forfeiture. *See Prince v. Inman,* 280 S.W.2d 779, 781–82 (Tex.Civ.App.—Beaumont 1955, no writ) (School trustee vacated his position pursuant to a self-enacting constitutional provision when he moved outside the school district and the fact that he moved back into the school district 32 days later did not entitle him to return to office.).

Certainly, if the citizens of Flower Mound through their elected town council representatives intended to exempt from automatic forfeiture council persons such as Randall who suffer a municipal court conviction that has been appealed to county court for trial de novo, they could have easily said so in the town charter. We refuse to add such an exemption to the charter by judicial fiat, as the dissent would have us do.

We, therefore, hold that under the express provisions of the charter and applicable Texas law, Randall's seat on the city council was instantly forfeited when he was convicted in municipal court of assaulting his wife. His subsequent appeal to county court did not automatically restore him to office or otherwise entitle him to reclaim the forfeited seat.

### Forfeiture of Office Does Not Require that the Convictions be Final and Unappealable

Finally, Randall contends that he cannot be removed from office until his convictions become final and unappealable.[9] This argument presents a question of first impression in this state. We have found no Texas cases squarely addressing the issue of whether a final, unappealable conviction is necessary for automatic forfeiture of public office under a constitutional, statutory, or municipal provision. However, our research has revealed that the majority of our sister states hold that a final conviction is not necessary, and that forfeiture of office is automatic upon conviction.

A number of courts have considered the effect on a conviction of a pending appeal, with the majority of decisions concluding that an appeal has no effect. A number of courts have held or recognized that a conviction under the terms of a state constitutional or statutory provision that a public office shall become vacant upon conviction of a felony, misdemeanor, malfeasance in office, or certain other enumerated offenses, is not affected by the filing of an

---

9. Randall cites section 201.024 of the Texas Election Code language, which provides, "If an officer is removed from office by a court or other tribunal, a vacancy occurs on the date the judgment becomes final." Tex. Elec.Code Ann. § 201.024 (Vernon 1986). This code provision is inapplicable, however, because Randall was not removed from office by a court or other tribunal. Cf. *Leo v. Mancias,* 885 S.W.2d 268, 270–71 (Tex.App.—Corpus Christi 1994, orig. proceeding). Instead, he was subject to an automatic forfeiture provision in the home-rule city charter.

appeal, as a vacancy or forfeiture of office apparently occurs automatically, or by operation of law, at the point of conviction. Annotation, *What Constitutes Conviction within Statutory or Constitutional Provision Making Conviction of Crime [a] Ground of Disqualification for, Removal from, or Vacancy in, Public Office*, 10 A.L.R. 5th 139, 156 (1993). We have also found strong public policy reasons for requiring that forfeiture of office occur upon conviction. These reasons were well stated by the Supreme Court of Mississippi in *Cumbest v. Commissioners of Election of Jackson County*, 416 So.2d 683, 685 (Miss.1982):

> Removal of a public officer from office does not constitute part of the judgment of conviction. It is a consequence imposed in the interest of the public and of sound government. It would be against the public interest to retain in office, pending an appeal, one who, upon a verdict of guilty and judgment by the court, is no longer presumed to be innocent. The presumption of innocence disappears with the conviction, even though the officer may ultimately succeed in establishing his innocence. Certainly confidence in an elective official is destroyed when he is convicted of a crime. Public office is a trust, and respect for the law and confidence in public officers must be founded upon their integrity.

*Id.* (quoting *Bucklew v. State*, 192 So.2d 275, 276 (Miss.1966)); *see also Raphalides v. New Jersey Dep't of Civil Serv.*, 80 N.J.Super. 407, 410, 194 A.2d 1, 2–3 (App.Div.1963), *cert. denied*, 41 N.J. 597, 198 A.2d 444 (1964); *Guthrie v. Chapman*, 187 Wash. 327, 330–32, 60 P.2d 245, 246–47 (1936). We find this rationale to be especially true when the crime involves moral turpitude because, as the Texas Court of Criminal Appeals has observed, such crimes represent a "grave infringement of the moral sentiment of the community." *Hardeman*, 868 S.W.2d at 405.

The public's interest in maintaining confidence in its elected officials is paramount to the right of a convicted officeholder to hold office pending appeal, even though harm may be caused to the official should the conviction be ultimately reversed on appeal. In *Cumbest*, the Mississippi Supreme Court weighed the competing interests of the officeholder and the public and concluded that the rights and interests of the public to be represented by elected officials who have not been convicted of a crime "far outweigh" those of the convicted officeholder. As the court explained:

> Concerning the individual's right to office following his conviction, two separate entities must be considered: (a) the official, and (b) the people served by his office.
>
> It must readily be conceded the office holder has a valuable right and material interest in his office. He may have gained it only at great personal sacrifice in time and money. He may have served honorably and well for many years. Furthermore, his conviction may be completely overturned on appeal.
>
> The citizenry of this State, however, have the compelling right to be represented by the public official whom they select by ballot and in whom they can repose confidence, unstained by any conviction. The public should not be required to suffer because of his conviction.... On balance, the rights of the public far outweigh the rights of the public official to this office and its emoluments. A public office belongs to the people it serves.
>
> The deprivation of these rights by a conviction of a crime in office must be considered by all candidates and office holders as one of the hazards of the position, and the possibility that such public official may ultimately pursue a successful cause of action against another for his wrongful prosecution, conviction and removal should not give him any right to the office following conviction.
>
> In short, a public office belongs to the people it serves; consequently, the rights of the public must prevail over that [sic] of the office holder.

*Cumbest*, 416 So.2d at 688–89; *see also Tarrant County v. Ashmore*, 635 S.W.2d 417, 421 (Tex.), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 452, 74 L.Ed.2d 606 (1982) ("[A] fundamental principle associated with our republican form of government is that every public officeholder remains in his position at the sufferance and for the benefit of the public, subject to

removal from office by edict of the ballot box at the time of the next election, or before that time by any other constitutionally permissible means."); *Bennett v. City of Longview*, 268 S.W. 786, 787 (Tex.Civ.App.—Texarkana 1925, no writ) ("[E]very officeholder takes his office subject to the exercise of the right of the people under our present Constitution to change their form of government. Election or appointment to an office is not a contract creating a vested right that cannot be disturbed, within the meaning of the state and federal Constitutions.").

We find the Mississippi Supreme Court's reasoning in *Cumbest* to be in harmony with the public policy of our State.[10] In the case of home-rule cities such as Flower Mound, the determination of whether elected city officials automatically forfeit their offices under certain circumstances is left to the citizens of those cities. The requirement in Flower Mound's town charter that its council members forfeit their office when convicted of a crime involving moral turpitude reflects the community's will that its public officials act in conformity with the moral standards of the community. The citizens of Flower Mound have the right to be represented by council members whom they select by ballot and in whom they can repose confidence, unstained by conviction of a crime involving moral turpitude. *See Cumbest*, 416 So.2d at 688–89. They should not be required to suffer because of a council member's conviction of such a crime, or be made to endure a convicted council member's continued representation on the town council pending appeal of his or her conviction after the citizens' trust and confidence in the council member's integrity has been destroyed. Accordingly, we hold that it is not necessary that Randall's convictions be final and unappealable before the automatic forfeiture provision of Flower Mound's charter takes effect.

10. In analogous Texas cases involving county officers convicted of crimes, automatic forfeiture under statute pending appeal has been upheld. *See Sullivan v. State*, 572 S.W.2d 778, 781–82 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r.e.); *Trevino v. Barrera*, 536 S.W.2d 75, 77 (Tex.Civ. App.—San Antonio 1976, orig. proceeding); *see also White v. Bolner*, 223 S.W.2d 686, 688 (Tex. Civ.App.—San Antonio 1949, writ ref'd) ("[T]he

## CONCLUSION

We hold that, under the home-rule charter, Randall automatically forfeited his seat on the Flower Mound town council when he was convicted in municipal court of two crimes involving moral turpitude and that he is not entitled to remain on the town council pending appellate review of those convictions. We therefore reverse and render judgment vacating the writ of mandamus issued by the trial court.

LIVINGSTON, J. filed a dissenting opinion in which DAUPHINOT, J. joins.

LIVINGSTON, Justice, dissenting.

I write separately because I disagree with the majority's treatment of Randall's appeals from municipal court to county court. I agree with the majority's conclusions that: 1) the council appropriately appointed a temporary municipal judge; 2) the clerical errors in the judgments, if any, do not impact the municipal court orders; and 3) the assaults would constitute crimes of moral turpitude. I do not, however, agree with the majority's analysis of the standard of review or its application regarding the municipal convictions. I would draw a distinction between the effect an appeal from a municipal court conviction and an appeal from a county or district court conviction has on whether a "conviction" exits or not. Additionally, I believe this court's opinion should address whether the County Criminal Court No. 1 of Denton County had jurisdiction to hear and convict Randall on appeal because resolution of this issue would determine whether the majority's discussion of the municipal court convictions is dicta. *See majority op.* at 604 n. 4.

## SUBSEQUENT CONVICTIONS AFTER TRIALS DE NOVO

After his municipal court convictions, Randall filed an appeal bond to perfect his

right to a review by a judicial body does not entitle [ousted public officials] to a temporary injunction, the effect of which is to perpetuate them in office pending that review."). In addition, the trial court, which is the body empowered with removal authority, is authorized to "suspend" the county officer from office pending appeal "[i]f the court finds that the public inter-

appeal and secure a trial de novo. On July 23, 1998, both cases were tried to a jury in the County Criminal Court No. 1 of Denton County, Texas, a court of record, and Randall was again convicted of the assaults. On August 7, 1998 appellants filed a motion to dismiss the appeal of the mandamus action as moot. This court denied the motion on August 28, 1998, and the case was submitted for en banc oral argument on September 1, 1998.

The majority opinion acknowledges the potential jurisdictional defect of the county court convictions but does not address the effect of Randall's subsequent convictions in county court. *See id.* If Randall's convictions were final when this case was submitted, then the majority's discussion of the municipal convictions is mere dicta. However, if County Criminal Court No. 1 had no jurisdiction to hear the appeals de novo, Randall's municipal court convictions may still not be final if he properly perfected his appeal.[1] Filing an appeal bond within ten days of the municipal court conviction is the proper method to perfect a misdemeanor appeal. *See* TEX.CODE CRIM. PROC. ANN. art. 44.14(a) (Vernon Supp.1999). While the appeal bonds are not part of this causes' clerk's record, the appellants' motion to dismiss and the reporter's record acknowledge the filing of the appeal bonds. For these reasons, I would treat the appeals as properly perfected, which necessitates a discussion of whether appealed municipal court convictions constitute "convictions" within the meaning of the Flower Mound Charter so as to justify immediate forfeiture of office.

## IS AN APPEALED MUNICIPAL COURT CONVICTION A "CONVICTION"?

In this appeal from the mandamus proceeding below, we are asked to review a civil district court's authority to grant mandamus relief to Randall by suspending his forfeiture of office because of his municipal court convictions, pending his trial de novo. We must review a trial court's grant of mandamus relief under an abuse of discretion standard. *See Hardin Const. Group, Inc. v. Strictly Painting, Inc.,* 945 S.W.2d 308, 312 (Tex. App.—San Antonio, 1997, orig. proceeding). When the issue on appeal relates only to the trial court's determination of legal principles, the appellate standard of review is much less deferential because a trial court has no discretion in determining what the law is or applying the law to the facts. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding); *Hardin,* 945 S.W.2d at 312; *see also In re El Paso Healthcare Sys.,* 969 S.W.2d 68, 72 (Tex.App.—El Paso 1998, orig. proceeding) (citing *Braden v. Marquez,* 950 S.W.2d 191, 193 (Tex.App.—El Paso 1997, orig. proceeding)). The majority opinion implies that the trial court's ruling is not entitled to deference in this case since the issues at hand are questions of law. *See majority op.* at 604–605. However, I believe the proper standard of review is abuse of discretion, and that the Flower Mound council members—not Randall—must show the trial court erred in applying the law to the facts. In other words, the appellants must show that the trial court erred, as a matter of law, in its rulings on each of the three issues raised by their appeal.

While a conviction that is subject to reversal on appeal may be a conviction for purposes of forfeiture of office under the Flower Mound Charter, a conviction that is subject to a trial de novo is not. An appeal from the

est requires suspension." TEX. LOC. GOV'T CODE ANN. § 87.032.

1. An appeal from a municipal court to a county court in Denton County is governed by chapters 25 and 26 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. chs. 25, 26 (Vernon 1988 & Supp.1999). According to section 25.0634(c), a statutory county criminal court has no jurisdiction over Class C misdemeanor appeals. *Id.* § 25.0634(c) (Vernon Supp.1999). Also, section 25.0633 provides:

(b) The County Court at Law No. 1 of Denton County has exclusive jurisdiction in Denton County over Class C misdemeanor appeals from inferior courts in Denton County....

....

(d) If the juvenile board designates the County Court at Law No. 1 of Denton County as the juvenile court of the county, the court shall give first preference to juvenile matters and second preference to criminal appeals from convictions in justice or municipal courts.... *Id.* § 25.0633(b),(d). Thus, County Court at Law No. 1 had jurisdiction of the appeal or trial de novo, not County Criminal Court No. 1 of Denton County. However, since we must assume that the record sufficiently supports evidence of perfection of the appeals, we should presume the municipal court convictions are still not final.

Flower Mound Municipal Court—a court not of record—to a county court results in a trial de novo. *See* TEX.CODE CRIM. PROC. ANN. art. 44.17; TEX. GOV'T CODE ANN. §§ 30.001–.01464 (Vernon 1988 and Supp.1999).

The majority states that an appeal de novo annuls the order of the court from which the appeal is taken, but does not vacate the conviction for all purposes. *See majority op.* at 607–608. The majority relies on *State v. Cortez*, 160 Tex. 532, 333 S.W.2d 839, 841 (1960), which states in pertinent part:

> [A]ppeal de novo, as in case of an appeal from the justice court to the county court, sets aside and annuls the order of the court or body from which the appeal is taken—*in the absence of some saving clause in the language of an act* . . . .

*Cortez*, 333 S.W.2d at 841 (emphasis added).

The majority does not mention *Cortez's* important, limiting phrase, "in the absence of some saving clause in the . . . act." Notably, article 44.17 does not contain a "saving clause"; instead, the article requires appeals of Randall's type to be tried de novo, "the same as if the prosecution had been originally commenced in that court." TEX.CODE CRIM. PROC. ANN. art. 44.17. This provision defies the majority's leap that, by appealing his municipal court convictions, Randall was not starting over for *all* purposes, but only for purposes of the criminal consequences of his conviction. *See majority op.* at 607. When read in light of *Cortez*, I believe article 44.17 directs that Randall's timely-perfected appeal resulted in the annulment of his municipal court convictions for all purposes, i.e., it is as if those convictions never occurred.

The Austin Court of Appeals has clearly noted the distinction that is missing from the majority's opinion:

> In an ordinary appeal, the appellate court either affirms or reverses the judgment of the trial court. In an appeal by trial de novo, the appellant is given an entirely new trial.

*State v. Campbell*, 820 S.W.2d 44, 46 (Tex. App.—Austin 1991, pet. ref'd). Once a defendant properly gives notice of appeal, a municipal court judgment, like the one in this case, is deprived of any finality. *See id.* at 45–46.

By contrast, when parties to a family law matter have a controversy heard by a court master, either party may "appeal" to the referring court. The code provides that such an appeal shall be heard de novo. *See* TEX. FAM.CODE ANN. §§ 201.001–.017 (Vernon 1996). However, this family law scheme includes a saving clause that specifically provides that the *master's recommendation shall remain in effect pending appeal. See id.* § 201.013(a).

The majority argues that the *Kutner v. Russell* case supports its position that *only the criminal effects* of the prior conviction are annulled. *See majority op.* at 607.[2] However, *Kutner* applied to a narrow set of facts. *See Kutner v. Russell*, 658 S.W.2d 585, 586 (Tex.Crim.App.1983) (orig.proceeding). The defendant was initially convicted in a municipal court for a Class C misdemeanor traffic violation. At the time of his conviction, he had the option of taking a driving safety course and deferring the proceedings against him pending his successful completion of the course. The defendant did not elect to take the class that would have deferred his prosecution and, potentially his conviction. Instead he proceeded to trial in municipal court, and after being convicted, appealed to the county court at law and tried to avail himself of the driving course—deferred adjudication option. When the county court refused this alternative, he petitioned for mandamus relief. The Court of Criminal Appeals refused to grant the mandamus, noting that the defendant had already foregone his other option and had chosen prosecution and, under the statute, had no basis for changing his mind. *See id.* In other words, he had already chosen prosecution over the safety course and deferred adjudication, and he could not, after choosing prosecution, switch to this pretrial option. To do other-

---

**2.** Neither party nor the majority opinion addresses the impact, if any, of section 12.03(c) of the penal code on Randall's forfeiture. That section provides: "Conviction of a Class C misdemeanor does not impose any legal disability or disadvantage." TEX. PENAL CODE ANN. § 12.03(c) (Vernon 1994).

wise would interfere with the provision's objective of giving defendants the right to choose a deferred prosecution route before going to trial. *See id. Kutner,* therefore, is limited by its holding to a pretrial choice made by a defendant that could have resulted in deferral; it does not apply to Randall's situation.

The remaining cases cited by the majority to support its theory that a "conviction" in a municipal court is final for any noncriminal consequences relate to appeals from judgments that are not subject to de novo review. *See majority op.* at 607–608.

In the *Cumbest* case, a county officer was removed from office *following* his conviction in a circuit court for fraud. *See Cumbest v. Commissioners of Election of Jackson County,* 416 So.2d 683 (Miss.1982). The majority cites this case for the proposition that one convicted may be removed, even though later successful in an appeal to overturn the conviction. *See majority op.* at 609. However, as noted, this was a felony case, following indictment by a grand jury. The official's removal from office followed his conviction and was part of his sentencing as required by Mississippi statute. *See Cumbest, 416 So.2d* at 687. The official had the right to an appeal but not a right to a trial de novo, and *Cumbest's* holding is limited to that scenario. *See id.* at 689.

Likewise, the *Raphalides* case provides little guidance, as the points on appeal in that case challenged the forfeiture of a municipal employment position *after* a municipal court conviction for larceny *had been affirmed on appeal* to the county court. *See Raphalides v. New Jersey Dep't of Civil Serv.,* 80 N.J.Super. 407, 410, 194 A.2d 1, 2–3 (App.Div.1963), *cert. denied,* 41 N.J. 597, 198 A.2d 444 (1964).

In the *Guthrie* case, the Supreme Court of Washington held that a county commissioner, who had been convicted by a jury of grand larceny and later obtained a reversal of his conviction by the supreme court, had no right to reinstatement to his former office. The court held, however, that the right to reinstatement was purely dependant upon statutory law. *See Guthrie v. Chapman,* 187 Wash. 327, 330, 60 P.2d 245, 246 (1936). The Washington statute in effect mandated that every office be vacated upon a conviction of an infamous crime, which the court held grand larceny was. Thus, the ouster took place pursuant to a mandatory statute under a conviction for grand larceny that was appealable to the state's supreme court, but not for a trial de novo. *See id.* at 329–30, 60 P.2d at 245–46.

Therefore, I believe the cases cited by the majority support only a finding that an appealable conviction can be a "conviction" for purposes of removal under the Flower Mound Municipal Charter when the appeal does not result in a trial de novo. Thus, appellants have failed to show that the trial court abused its discretion or failed to apply the law to the facts appropriately. For these reasons, I dissent. I would affirm the trial court's grant of mandamus relief.

DAUPHINOT, J. joins.